COOK *v.* STATE.

(*Nashville,* December Term, 1953.)

Opinion filed February 11, 1954.

J. H. WARDEN, of Shelbyville, and CLARENCE L. CUMMINGS, of Murfreesboro, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Cook was indicted, tried and convicted for grand larceny with his punishment fixed at not more than three years in the State Penitentiary, from which this appeal comes.

The plaintiff in error for some years had been in the habit of buying and selling cedar timber in Bedford County and was familiar with the market prices. On the day charged in the indictment, he approached the prosecutor with reference to selling him a load of cedar. The prosecutor and the plaintiff in error accompanied by the son of the plaintiff in error and another man came to the prosecutor's place of business with this load of cedar after the prosecutor had agreed to buy it. The timber was scaled and the amount of footage was agreed upon as well within the price. The price on the current market was $80 per thousand feet and the load scaled slightly over a thousand feet or a total of a little in excess of $80. The prosecutor told his secretary to make out the check to the plaintiff in error for the amount of this timber at the rate of $80 per thousand. She testifies that in making her calculation the plaintiff in error was standing near her and agreed to the correctness of it. He denies this fact but the jury may well have believed her.

The secretary was unfamilar with timber. This young lady computed the check at the rate of $80 per hundred

feet rather than per thousand feet with the result that the check that she wrote was something in excess of $800 instead of slightly in excess of $80. After deducting approximately $36 due to the party from whom the plaintiff in error had bought the timber, she wrote a check for the difference between $800 plus and this smaller check for $36 and delivered it to the prosecutor for his signature. The prosecutor signed the check without paying any attention to the amount and it was then delivered to the plaintiff in error. The plaintiff in error very hastily went to the bank on which the check was drawn and had it cashed. Very shortly after, within a matter of one half hour or so, the prosecutor discovered the error in the check and sought to have payment stopped but he found that this was too late as the plaintiff in error had already cashed the check.

The plaintiff in error testifies that he paid no attention to the amount of the check when he presented it to the bank nor did he count his money until he went outside when in dividing the proceeds with his son and the other party, they discovered that there was too much money for the cedar which they had sold. The bank who had cashed the check testifies that he observed the plaintiff in error and remarked to him that you are certainly getting a high price for this cedar.

The question presented by this appeal is whether under these facts, the plaintiff in error is guilty of the larceny of the excess amount of this check over that for which it should have been drawn. It is not disputed in the record but that the plaintiff in error is guilty of some crime but it is insisted that he is not guilty of larceny because there was no trespass in the original taking, that he came into possession of the entire amount through an error of the

prosecutor and that therefore he cannot be guilty of larceny.

Ordinarily the meaning of larceny at common law is defined "as the felonious taking by trespass and carrying away by any person of the goods or things personal of another from any place, without the latter's consent and with the felonious intent permanently to deprive the owner of his property and to convert it to the taker's own use or, as sometimes stated, to the use of some person other than the owner." 32 Am. Jur. page 883, Sec. 2.

"Generally one who innocently receives an overpayment of money by mistake is not guilty of larceny if, after discovering the mistake, he converts the excess moneys to his own use, but the rule is otherwise if he receives the overpayment knowingly with intent at the time of the overpayment to convert the excess." 52 C. J. S., Larceny, Sec. 29c, p. 826.

This general rule as last stated is subject to the exception that where money or other property is delivered by mistake, especially where a larger sum of money is parted with than is intended, and the receiver takes it with the knowledge of the mistake and with the intent to keep it, the offense is larceny, because there is no consent on the part of the owner to part with the excess delivered by mistake. *State* v. *Ducker,* 8 Or. 394, 34 Am. Rep. 590; *Sapp* v. *State,* 157 Fla. 605, 26 So. (2d) 646.

In the case of *Sapp* v. *State,* supra, the Supreme Court of Florida in 1946 affirmed a conviction of larceny of Sapp on the ground that Sapp entertained animo furandi, ("An intent fraudulently to appropriate goods to the taker's own use, or wholly to deprive the owner of them; a taking with intent to make use of." 3 C. J., page 192, 3 C. J. S., Animo, p. 1367) from the moment that Sapp

picked up the money. In this case Sapp was given a draft for a compensation payment for a very small amount but due to an error of the cashier he was given some $4,000 in excess of the amount that the check was supposed to have been drawn for. The Florida court then concludes that Sapp immediately due to the fact that there was such a large sum of money in excess of what he was intended to get that in taking this money and not returning it after discovering this overpayment which he should have done by the large excess of the amount of which he was entitled to that he then formed the necessary animo furandi and was guilty of larceny.

In the brief of the State they quote from *State* v. *Ducker,* supra, as follows:

"The money in excess of that which the appellant was entitled to receive, was taken without the owner's consent, and that which was thus taken was appropriated to the appellant's use with an intent to cheat and fraudulently to deprive the owner thereof.

"These two elements, being both present in this case, are sufficient to constitute the crime of larceny, for it will not do to say that the owner parted with his money voluntarily, and, therefore, there could not have been any unlawful taking. While it may be said that it was the physical act of the owner in handing that which was his to another, yet there was lacking his intellectual and intelligent assent to the transfer, upon which the consent necessarily depended. And so in the case 'where money or property is obtained from the owner by another upon some false pretense, for a temporary use only, with the intent to feloni-

ously appropriate it permanently, the taking thereof, though with the owner's consent, is larceny.' *Wolfstein* v. *People,* [6 Hun 121] ; *People* v. *McGarren,* 17 Wend. 460; *People* v. *Crall,* [Call] 1 Denio 120.''

In the instant case we find that the facts show that the plaintiff in error received some $750 more than he was entitled to. His check if properly drawn would have been only some $46 plus. Clearly when the plaintiff in error received this large excess over the amount that he was entited to get he knew immediately that this money did not belong to him and therefore when he took it from the bank and went away and divided with his partners or helpers in the timber business it seems to us that he was clearly guilty of larceny under the common law definition of that term as heretofore quoted.

The authorities on the question are very much divided. Many of them go off on particular statutes of the State but we are convinced that under the facts of the instant case the plaintiff in error is guilty of the crime for which he was indicted and convicted. Suffice it to say that the opinion in *Sapp* v. *State,* supra, very ably and succinctly reviews all the authorities on the subject and it is needless for us to further go into a discussion of the matter. For the reasons stated the judgment below will be affirmed.