652 So.2d 1126 (1995)
STATE of Mississippi
v.
Ralph SMITH.
No. 91-KA-01236-SCT.
Supreme Court of Mississippi.
March 30, 1995.
Manya Creel, Claiborne McDonald, IV, Asst. Dist. Attys., Poplarville, for appellant.
William L. Ducker, Purvis, for appellee.
EN BANC.
McRAE, Justice, for the Court:
This appeal arises from an order of the Lamar County Circuit Court dismissing grand larceny charges against Ralph Smith. At issue is whether Smith exhibited the requisite intent to commit grand larceny in keeping a check erroneously paid to him by Butler Construction and using the proceeds two weeks later to pay his own bills. Finding that the question of intent is a factual issue for jury determination, we reverse and remand for trial on the matter of intent.

FACTS
Ralph Smith, owner of Weatherproof Services, Inc., received a check issued by Butler Construction, Inc. on October 15, 1990, in the amount of $13,860.00, which Butler did not owe to Weatherproof. Instead, the check should have been issued and sent to Weather-Tight Water Proofing, Inc. Smith deposited the check in Weatherproof's Trustmark National Bank account in Hattiesburg, knowing that he had received the check in error. Two weeks later, he paid out $13,557.62 in checks over a period of two days. In addition to business debts, many of these checks appeared to be in payment of personal expenses, i.e., J.C. Penney, McRae's, and Reader's Digest.
Smith was indicted for grand larceny in February, 1991, for accepting and disbursing funds from a $13,860.00 check presented to Weatherproof Services, Inc. by Butler Construction, Inc.
Weatherproof was a wholly-owned company which was qualified to do business in Mississippi until its February 16, 1990 administrative dissolution, but Smith continued to operate Weatherproof after its dissolution. On October 15, 1990, Smith received a check written by Butler, a Texas corporation, in the amount of $13,860.00. However, Butler did not owe Weatherproof, but instead owed Weather-Tight Water Proofing, Inc., another Texas corporation. The check had been typed in error by a secretary who had read the wrong vendor name and address line from Butler's address list.
Weatherproof's September 30, 1990, bank statement reflected a balance of $79.50. The October 31, 1990, statement indicated the deposit of $13,860.00. The December 2, 1990, statement showed a balance of $738.90 with a previous balance of $13,853.02. Weatherproof, acting through Smith, made one deposit in the amount of $450.00 on November 13, 1990.
Upon realizing the mistake, Butler notified Smith who said he did not have money to pay *1127 back the check, but would return the excess funds. The funds were never paid back to Butler, and it filed a civil suit to recover the amount of the check. Subsequently, Butler brought criminal charges before the civil matter was resolved.
The State argued that the knowledge and intent of Smith to convert the funds to his use, thus committing grand larceny, could be proven by Smith's actions in depositing such a large check into his account and not sending the check back when it was not owed to him. The lower court found that the proof was not sufficient to prove criminal intent or constitute the crime of grand larceny.

DISCUSSION OF LAW
The precise issue of whether a check tendered to a defunct company in gross overpayment and subsequently used by the owner to pay off business and personal debts constitutes grand larceny is one of first impression in this state. Therefore, we must turn to the laws of our sister states as well as our own existing laws which may be analogous to interpret the meaning of our grand larceny statute in this context.
Grand larceny is defined in this state as:
Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Two Hundred Fifty Dollars ($250.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the penitentiary for a term not exceeding five (5) years; or shall be fined not more than one thousand dollars ($1,000.00) or both.
Miss. Code Ann. § 97-17-41 (Revised 1994). The minimum amount which constitutes grand larceny has been increased by the Legislature, but the subsequent modification has no effect on the case at bar.
A critical part of the code definition of grand larceny is the specific intent to steal. Strong v. Nicholson, 580 So.2d 1288, 1294 (Miss. 1991). "Grand larceny requires evidence of specific intent to deprive the owner of his property wholly and permanently." Slay v. State, 241 So.2d 362, 364 (Miss. 1970). The State advocates that this intent can be implied from the circumstances. This view is in line with a recent Texas Court of Appeals case which held that intent to permanently deprive the owner of the property must exist at the time of the theft; however, specific intent to commit theft can be inferred from the surrounding circumstances. Mattiza v. State, 801 S.W.2d 195, 197 (Tex. App. 14 Dist. 1990).
The most damning evidence against Smith is his disbursement of thirty-one checks in two days. However, Smith claimed that he waited two weeks before taking any action with the check, inferring that he did not have the requisite intent to steal at the time he came into possession of the Butler's property.
Following dictum from one of our past cases, this Court can allow a finding of intent based on circumstances regardless of whether the intent existed at the time of the taking:
We have long elaborated the statute to mean that, to show one guilty of grand larceny, the prosecution must prove the accused took and carried away, at any time, personal property belonging to another without the owner's consent, under circumstances where the accused was not entitled to possession of the property.
Strong v. Nicholson, 580 So.2d 1288, 1294 (Miss. 1991) (emphasis added).
Other state supreme courts have held that the intent for larceny must develop at the very moment of the taking. State v. Crosby, 515 So.2d 570 (La. 1987); State v. Hanson, 141 Vt. 228, 446 A.2d 372 (1982). However, the Louisiana Supreme Court has said although intent is a question of fact, it need not be proven as a fact, and may be inferred from circumstances of the transaction and actions of the defendant. Crosby, 515 So.2d at 571.
Smith, through his counsel, stated in his brief. "They overpaid the bill by $13,000." In fact, Smith admitted knowledge of the mistake by the following statement in his brief:
The fact is Butler's financial secretary erred and appellee, Ralph Smith, benefited from the mistake. This happens to all *1128 businessmen on a regular basis when a cashier gives a customer back too much change; however, appellee will confess that few people over-pay a bill by $13,000.
A general definition of overpayment of money by mistake is as follows:
One who innocently receives an overpayment of money by mistake is not guilty of larceny if, after discovering the mistake, he converts the excess moneys to his own use, but the rule is otherwise if he receives the overpayment knowingly with intent at the time of the overpayment to convert the excess.
52A C.J.S. § 29c p. 826.
A number of jurisdictions have made exceptions to this general rule. In an older Tennessee case, the trial court convicted the defendant/seller of larceny because he was familiar with the market price of lumber and received and cashed a check which was $750.00 more than the amount to which he was entitled. Cook v. State, 196 Tenn. 104, 264 S.W.2d 571 (1954). In Cook, a secretary erroneously made out an $80.00 check for $800.00. Id. at 572. On appeal, the defendant argued, as does Smith, that he was not guilty of larceny because there was no trespass in the original taking, but that he came into possession through an error. Id. The Tennessee Supreme Court refused to accept this argument because the amount he took was such a large amount, and therefore, he had to have known that the money did not belong to him. Id. at 573. In reaching its decision, the Cook Court quoted the common law definition of larceny, which uses language similar to that of the Mississippi statute. Cook, 264 S.W.2d at 573.
The Fourth Circuit Court of Appeals has responded to a similar scenario when sustaining a conviction of grand larceny in a bank-customer context. U.S. v. Rogers, 289 F.2d 433 (4th Cir.1961). The State cites Rogers as authority, but the Fourth Circuit reversed and remanded on the issue of whether the customer committed larceny in accepting excess monies. Rogers, 289 F.2d at 439. However, Rogers does insinuate that overpayment is the type of issue for the jury to decide since a new trial was ordered for the jury to decide the essential elements of the offense which were (1) that the defendant knew when he received the money from the teller or picked it up from the counter that it was more than his due and (2) that he took it from the bank with the intention of converting it. Id. In Rogers, the defendant deposited $80.00 of a $97.92 check into his brother's account, and the teller returned a balance of $1,126.59, which he accepted. Id. at 434.
Likewise, Smith accepted the $13,806.00 check from Butler and made no effort to return it. The jury could have decided that Smith had intent from the following: the fact that Smith knew the money did not lawfully belong to him as evidenced in his brief by the statement that when Butler sent a collection agent to Hattiesburg, Smith admitted to spending the money and discussed how he might repay the debt. Whether Smith had the requisite intent to permanently deprive Butler, however, is a question for the jury to decide. This Court has previously recognized grand larceny cases "going to the jury." Deal v. State, 589 So.2d 1257, 1259 (Miss. 1991).
In Sapp v. State, the Florida Supreme Court upheld a jury verdict where the defendant was found guilty of larceny when he accepted a $4,328.37 check from a bank teller when it should have been $36.00. Sapp v. State, 157 Fla. 605, 26 So.2d 646, 647 (1946). The distinguishing difference between Sapp and this case is that Sapp was asked by the teller whether a mistake had been made, and he replied "No, I don't think so." In the case at hand, Smith was not immediately confronted by Butler about the check error. Id. This distinguishing feature becomes important only when addressing the issue of whether Smith formed the requisite intent at the time of the taking or later.
This Court has held that intent is a question of fact for the jury to decide:
Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, *1129 and expressions made by the actor with reference to his intent.
Willis v. State, 518 So.2d 667, 669 (Miss. 1988) (citing Shanklin v. State, 290 So.2d 625 (Miss. 1974).

CONCLUSION
Butler erroneously paid Smith. Smith kept the check for two weeks and then made disbursements toward his debt. The statute holds a person guilty of grand larceny when he takes and carries away the personal property of another with the intent to deprive the rightful owner. The statute does not provide a clear time line upon which this intent must exist. Impliedly, the intent must exist at the time of the taking. Smith may or may not have had the requisite intent to wrongfully keep Butler's property at the time he received the check. Testimony before a jury would reveal whether he had or not.
However, this Court in Strong v. Nicholson defined grand larceny as the taking and carrying away "at any time personal property belong to another ..." Therefore, this Court holds that Smith's wrongful possession occurred when Butler realized the error and made demand for the check; and, at this time, the requisite intent developed since he did not return the property.
Accordingly, we reverse and remand this case for trial so that a jury may determine the factual issue of intent.
REVERSED AND REMANDED FOR A NEW TRIAL.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by BANKS, J.
DAN M. LEE, Presiding Justice, dissenting:
Because I believe that the lower court was correct in dismissing grand larceny charges against Ralph Smith, I respectfully dissent. Today's majority opinion confuses the distinctions between grand larceny (a crime in this state) and civil conversion (not criminally proscribed by our statutes). In the case sub judice, the lower court correctly determined that even if it gave the State the benefit of all reasonable inferences that might be drawn from the evidence, a reasonable juror could not have found beyond a reasonable doubt that Smith wrongfully took or stole the check from Butler with the intent to commit grand larceny. The facts clearly demonstrate that Smith did not take or steal the check from Butler. Butler mailed the check voluntarily, but mistakenly to Smith and thus, the check was not "taken or stolen." Therefore, the lower court properly dismissed the grand larceny charge against Smith.
"As with all criminal offenses, the prosecution may not procure a valid and enforceable conviction save it prove beyond a reasonable doubt each element of the offense." Davis v. State, 586 So.2d 817, 819 (Miss. 1991); Doby v. State, 557 So.2d 533, 540 (Miss. 1990); Steele v. State, 544 So.2d 802, 808-09 (Miss. 1989). "Generally speaking, and in the absence of statutory modifications, it is essential to every [grand] larceny that there be (1) a felonious or fraudulent taking ..., accompanied by (2) the carrying away or asportation by one person of (3) the personal goods or property of another which may be the subject of larceny. Such taking must be (4) without the consent and against the will of the owner, involving a trespass to the latter's possession or its equivalent, and (5) with a felonious intent of the taker, existing at the time of the taking, to steal the same." Smith v. State, 214 Miss. 453, 455-56, 59 So.2d 74 (1952) (emphasis added), quoting Simmons v. State, 208 Miss. 523, 526, 44 So.2d 857, 858 (1950). In larceny the taking involves a trespass, and the felonious intent must exist at the time of such taking. Jackson v. State, 211 Miss. 828, 832, 52 So.2d 914 (1951).
To support a conviction of grand larceny, the prosecution must prove beyond a reasonable doubt that the property was taken by the defendant, and, if so, with an intent to steal. Hubbard v. State, 41 So.2d 1, 2 (Miss. 1949). Thus, to convict Smith of grand larceny, the prosecution has to prove beyond a reasonable doubt that the check was "taken or stolen" by Smith and that he had the *1130 intent to steal the property at the time the check was "taken or stolen." Smith, 214 Miss. at 455-56, 59 So.2d 74; Hubbard, 41 So.2d at 2.
In the case sub judice, the lower court had before it uncontroverted evidence that Butler voluntarily, but mistakenly mailed the check to Smith. Smith received the check from Butler on or about October 15, 1990, and then on October 30, 1990, Smith deposited the $13,860.00 check in his checking account. On November 1, 1990, Smith began to write checks on the $13,860.00. Not only could the prosecution not prove that there had been a felonious or fraudulent taking, but the prosecution could not prove beyond a reasonable doubt Smith's criminal intent to steal the money on October 15, 1990, at the time he received the check. Therefore, the prosecution clearly could not prove beyond a reasonable doubt the elements necessary to convict Smith of grand larceny. Smith v. State, 214 Miss. at 455-56, 59 So.2d 74 (1952); Jackson v. State, 211 Miss. 828, 832, 52 So.2d 914 (1951).
In the lower court's ORDER OF DISMISSAL, the court found:
That the State would prove in its case in chief that:
A. Butler Construction Incorporated, Arlington, Texas on October 15, 1990, issued a check for $13,860.00 to Weatherproof Services, Inc. of Hattiesburg, Mississippi.

B. Weatherproof Services Inc. is a wholly owned by the Defendant Ralph Smith who is its president.
C. That the Defendant Ralph Smith deposited the check for $13,860.00 into account XXX-XXXXXXX with Trustmark Bank in Hattiesburg, Lamar County, Mississippi in the name of Weatherproof Services Inc., Ralph Berryman Smith.
D. That the check was erroneously issued to the Defendant by the victim and the check should have been issued to Weathertight Weatherproofing, Inc. of Dallas, Texas to whom the sum was owed.
E. That the States [sic] proof would show that the victim owed the Defendant nothing. However, the defendant contends some money was due his company and that there was an on-going business relationship between the parties. The contended amount due was almost $10,000 less than the check.
... .
J. The court finds that this proof if put in at the trial would not be sufficient to prove a criminal intent or constitute the crime of Grand Larceny....
The lower court clearly recognized that the State could not prove that Smith took or stole the check in dispute. Accordingly, the lower court ruled as a matter of law that the proof presented during the motion to quash the indictment was insufficient to establish the elements of the crime of grand larceny. I find no fault in the lower court's determination that the state's evidence was insufficient to prove beyond a reasonable doubt all of the elements of grand larceny.
While I do not condone Smith's conduct, I cannot say that he is guilty of grand larceny. Smith did nothing unlawful or fraudulent to obtain possession of the check. He had lawful possession of the check because Butler voluntarily, but mistakenly mailed it to him. Later, after Smith lawfully received the check, he converted the funds to his own use. Therefore, Smith is liable for civil conversion and nothing more. If the legislature desires to make conversion a criminal matter then it should. However, it is not this court's province to create crimes and then punish them. Accordingly, I respectfully dissent.
BANKS, J., joins this dissent.