# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-KA-01561-COA

**JOHNNY POOL A/K/A JOHN VANSLYKE POOL, III**  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/1997 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | JEANNENE PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CT I BURGLARY OF A DWELLING: SENTENCED TO 20 YEARS WITH 10 YEARS SUSPENDED IN MDOC; CT II GRAND LARCENY: SENTENCED TO 5 YEARS WITH 2 YEARS SUSPENDED TO RUN CONSECUTIVELY WITH THE SENTENCE IMPOSED IN CT I. |
| DISPOSITION: | AFFIRMED - 07/27/1999 |
| MOTION FOR REHEARING FILED: | 8/9/1999; 10/19/1999 |
| /TD> | |
| CERTIORARI FILED: | ; granted 4/6/2000 |
| MANDATE ISSUED: | 9/7/2000 |

EN BANC.

LEE, J., FOR THE COURT:

¶1. John Vanslyke Pool, III was found guilty of burglary of a dwelling and grand larceny by a Jones County Circuit Court jury. Aggrieved of this judgment, Pool raises the following issues as error: 1) the court erred in failing to strike for cause a daughter of a police officer whose department was prosecuting this case; 2) the court erred in allowing into evidence certain of the recovered guns, because they were the product of illegal

questioning; 3) the court erred in allowing the State to amend the burglary indictment towards the end of the State's case, as the change was one of substance, and furthermore, the change has never been filed or recorded with the circuit court; 4) the court erred in overruling defendant's motion to dismiss count II of the indictment; the grand larceny charge, as it was double jeopardy; and 5) the verdict of guilty of burglary was against the overwhelming weight of the evidence as there was no evidence presented that the defendant broke and entered the property. Finding the evidence fully supports the verdict, we affirm.

## FACTS

¶2. On December 24, 1996, Lamar Crotts, with his nephew, filed a report with the Ellisville, Mississippi Police Department stating that Crotts's home was burglarized. Items were also stolen from an unenclosed shed on the Crotts's property. Some of the items that were taken from the shed were a Gravely walk-behind tractor, a Yazoo Big Wheel lawn mower, and a cultivator. Furniture, jewelry, firearms, and other items were taken from the home.

¶3. The Ellisville Police Chief, R.L. Jenkins, received an anonymous telephone call on December 29, 1996. The caller stated that items reported stolen from the Crotts's residence were located at a home situated at Dubose Street and Deason Street. Jenkins, with Officer Terry Yates, went to the residence on December 30, 1996. Located on the west side of the house was a Gravely tractor and Yazoo Big Wheel lawn mower. Jenkins and Yates knocked on the door and Pool answered. Jenkins asked Pool about the items in the yard and Pool responded that the items belonged to his father. Jenkins testified that he read Pool his *Miranda* rights and Pool responded that he had taken the items from Crotts's residence. Pool stated he knew his rights, and if the officers gave Pool some time he would bring the items to the police station. Later on that same day, Pool returned some of the items taken from Crotts.

¶4. The State called Carl and Benjamin Kelly, a father and son, who testified that they bought some of the stolen property from Pool. Crotts testified next for the prosecution and identified some of the missing items.

¶5. The defense chose not to call any witnesses. Pool was convicted of one count of burglary of a dwelling and one count of grand larceny.

## ANALYSIS

## I. THE COURT ERRED IN FAILING TO STRIKE FOR CAUSE A DAUGHTER OF A POLICE OFFICER WHOSE DEPARTMENT WAS PROSECUTING THIS CASE.

¶6. Pool contends that the trial court improperly denied his challenge for cause of Susan Shoemake because she is the daughter of an officer who works for the Ellisville Police Department, the department which investigated this case. During the court's voir dire, the judge asked if anyone knew anything about the case, and Shoemake raised her hand. For the record, the trial judge stated that Shoemake was the daughter of Sonny Patterson, an officer with the Ellisville Police Department. The trial court then asked Shoemake if she was predisposed in any way to find for the State or if her knowledge of persons in the police force would have any bearing on her decision to be fair and impartial. She responded that she could base her decision on the facts and the law. Later during the State's voir dire, the question was asked if anyone on the panel could not be as fair to one side as to the other. Shoemake responded that she could be fair.

¶7. During jury selection in the judge's chambers the defense asked that Shoemake be removed during his challenges for cause. The trial court denied the request stating that Shoemake stated she could be fair and

impartial. The defense then used six of its peremptory strikes before Shoemake's name was addressed. This left Shoemake on the jury.

¶8. "[T]he issue of whether a juror who is related to a law enforcement official should be struck for cause has been repeatedly addressed by this Court . . . ." *Taylor v. State*, 656 So. 2d 104, 110 (Miss. 1995). In *Mhoon v. State*, 464 So. 2d 77, 82 (Miss. 1985), the Mississippi Supreme Court declined to adopt a per se rule disqualifying a juror on the basis of his or her relationship to law enforcement personnel. "There is no reason why, if left unchallenged peremptorily, an officer or an officer's relative should not serve on a jury if otherwise qualified to follow the law and the evidence." *Id.* at 81 (citing *Cook v. State*, 242 Miss. 29, 134 So. 2d 151 (1961); *Gardner v. State*, 145 Miss. 215, 110 So. 589 (1926)). "[T]here is no automatic, 'hard and fast rule that law enforcement officers or their relatives can be challenged for cause.'" *Walker v. State*, 671 So. 2d 581, 624 (Miss. 1995) (quoting *Mhoon*, 464 So. 2d at 81) (citing *Odom v. State*, 355 So. 2d 1381 (Miss. 1978)). The Mississippi Supreme Court and this Court have repeatedly held that an officer or his relative can serve as a juror. There is no suggestion by Pool that Shoemake was not qualified as a juror. Shoemake repeatedly assured the trial court that she could be fair and impartial and there is nothing in the record that reveals that Shoemake's inclusion as a juror prejudiced Pool. We decline to find the trial judge in error for failing to allow Pool to challenge for cause Shoemake.

## II. THE COURT ERRED IN ALLOWING INTO EVIDENCE, CERTAIN OF THE RECOVERED GUNS, BECAUSE THEY WERE THE PRODUCT OF ILLEGAL QUESTIONING (FRUIT OF THE POISONOUS TREE).

¶9. Pool argues that the trial court erred in admitting firearms because these items were retrieved due to a *Miranda* violation. Pool was arrested for the charge of burglary and grand larceny on January 8, 1997. When Pool was arrested, he was read his *Miranda* rights at 11:18 a.m. Thereafter, Pool refused to sign a waiver of his rights and refused to cooperate in providing the information on a custody form, which records an arrestee's name, age, date of birth, and other such information. The officer who was trying to get the information from Pool retrieved an old custody form on Pool and proceeded to fill out the new form. Pool started to volunteer the information on the custody form. Then the officer told Pool that there were more items taken from Crotts's home, and Pool told the officer that if he would take him he would go get the rest of the items.

¶10. The refusal to sign the waiver of rights form is not a per se invocation of one's Fifth Amendment rights. *Mohr v. State*, 584 So. 2d 426, 429 (Miss. 1991). It is important to note that Pool did not request an attorney. Rather he refused to sign the form, and he refused to answer any questions. In *Mohr*, the Court held that "[a] request for an attorney invokes the defendant's Fifth Amendment rights, but a request for someone other than an attorney does not." *Id.* The Court found that Mohr's temporary refusal to sign the waiver form was not a request for counsel. *Id.*

¶11. The officer who had started the questioning honored Pool's wishes and stopped questioning him. The officer gave Pool the opportunity to exercise his rights to remain silent and to obtain an attorney. Pool's subsequent volunteering of information for the custody form reasonably leads to the conclusion that he did not, in fact, wish to invoke his right to remain silent.

¶12. If however, we were to find a *Miranda* violation, we would still find that the admittance of the firearms was harmless error. This is so because the only items of evidence which were introduced as a result of Pool's conversation after his *Miranda* rights were given were three firearms stolen from Crotts's home.

Given the numerous other items stolen from the Crotts's residence which were linked to Pool and which were introduced into evidence, we submit that if there were error it was harmless. "Even in a case where a [*Miranda*] violation is demonstrated to have actually occurred, nevertheless, it will be considered harmless error if the whole record demonstrates beyond a reasonable doubt that it was without any substantial prejudicial effect under all of the facts and circumstances of the case." *Cooley v. State*, 391 So. 2d 614, 623 (Miss. 1980). *See also Luster v. State*, 515 So. 2d 1177, 1179 (Miss. 1987). The introduction of the three additional firearms, in light of all the other evidence was merely harmless error at best. The trial court's overruling of Pool's motion to suppress does not form the basis of reversal.

### III. THE COURT ERRED IN ALLOWING THE STATE TO AMEND THE BURGLARY INDICTMENT TOWARDS THE END OF THE STATE'S CASE, AS THE CHANGE WAS ONE OF SUBSTANCE, AND FURTHERMORE, THE CHANGE HAS NEVER BEEN FILED OR RECORDED WITH THE CIRCUIT CLERK.

¶13. Pool was indicted for the burglary of the dwelling house of Lamar Crotts, "located at 110 Lee Street, Ellisville, Jones County, Mississippi . . . ." The testimony at trial however showed that Crotts's burglarized house was located approximately a mile west of Ellisville. The Lee Street address was apparently where Crotts was living, but was not the house that was burglarized. After Crotts testified, the prosecution moved to have the indictment amended to conform to the evidence. Pool objected claiming that the amendment would be one of substance and amendable only by the grand jury. The trial court offered a continuance, which Pool initially appeared to desire, but when asked how long a continuance was needed Pool replied he needed a continuance until a new indictment was issued. The trial court overruled Pool's objection and allowed the amendment to the indictment.

¶14. "It is fundamental that courts may amend indictments only to correct defects of form, however, defects of substance must be corrected by the grand jury." *Rhymes v. State*, 638 So. 2d 1270, 1275 (Miss. 1994).

> It is well settled in this state, as was noted by the learned circuit judge, that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case.

*Shelby v. State*, 246 So. 2d 543, 545 (Miss. 1971) (citations omitted). "The test . . . is whether the defense as it originally stood would be equally available after the amendment is made." *Eakes v. State*, 665 So. 2d 852, 859-60 (Miss. 1995) (citations omitted).

¶15. In *Brewer v. State*, 351 So. 2d 535, 537 (Miss. 1977), the Mississippi Supreme Court reversed the trial court for amending an indictment because the Court found that the amendment was to substance rather than form. However, the Court stated "[w]e wish to make it clear that we *do not disturb by our ruling here cases which hold that an indictment can be amended to correct a misnomer in an address . . . ." Id.* (emphasis added).

¶16. The amendment to the indictment did not deprive Pool of an opportunity to prepare his defense since all the information provided him gave him knowledge in advance of trial of the location of the actual crime scene. The amendment to the indictment in the present case, allowed a defense against a charge of burglary as was equally available before the amendment. There was sufficient notice to Pool of the crucial elements

of this offense to be proven. We find Pool suffered no prejudice because of the amendment to the indictment.

¶17. Pool also argues that the amendment was defective because it was never recorded and/or filed on the minutes or with the Circuit Clerk nor was an order ever entered. Mississippi Code Annotated § 99-17-15 (Rev. 1994) states "The order of the court for amendment of the indictment, record or proceedings provided in § 99-17-13 shall be entered on the minutes, and shall specify precisely the amendment, and shall be a part of the record of said case . . . ."

¶18. In *Reed v. State*, 506 So. 2d 277 (Miss. 1987), the Mississippi Supreme Court, discussing Miss. Code Ann. § 99-17-15, stated "[W]e note that no valid order was entered on the record authorizing the alleged amendment as required by § 99-17-15 of the Miss. Code Ann. (1972). The State is required to make sure that such an order appears in the record and *the defense is required to object to the absence of such order if it wishes to preserve this point for appeal*." *Id.* at 279 (citing *Sturgis v. State*, 379 So. 2d 534 (Miss. 1980)) (emphasis added).

¶19. "[A] defendant must specifically bring the absence of an order on the minutes of the court allowing the amendment to the attention of the trial court, or the error will be waived and it may not be raised for the first time on appeal." *Sturgis*, 379 So. 2d at 537. "It is clear . . . that . . . a defendant must specifically bring the absence of an order on the minutes of the court allowing the amendment to the attention of the trial court, or the error will be waived and it may not be raised for the first time on appeal." *Doby v. State*, 532 So. 2d 584, 587 (Miss. 1988) (citations omitted).

¶20. Pool filed a motion for a new trial which does not make any reference to the amendment to the indictment, or how the amendment was made, or the failure to timely enter upon the minutes of the court an order authorizing the amendment. Although Pool did object to the amendment at the time it was made, the objection addressed how the amendment was substantive rather than to form. Therefore, Pool's failure to object to the absence of the order in his motion for new trial is fatal to this issue.

**IV. THE COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS COUNT 2 OF THE INDICTMENT, THE GRAND LARCENY CHARGE, AS THIS VIOLATED THE PRINCIPLE OF DOUBLE JEOPARDY, SINCE THIS WAS THE UNDERLYING CRIME FOR THE BURGLARY CHARGE.**

¶21. The grand jury returned a two count indictment against Pool charging him with grand larceny and burglary of a dwelling. Prior to trial, Pool argued that since grand larceny was the underlying felony for the burglary charge, the grand larceny charge constituted double jeopardy.

¶22. Count I of the indictment issued against Pool was for the burglary of a dwelling. The burglary of a dwelling statute, Miss. Code Ann. § 97-17-23 (Rev. 1994), states as follows:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.

"The crime of burglary consists of two essential elements: (1) the unlawful breaking and entering; and (2) the

intent to commit a crime once entry has been gained." *Ward v. State*, 726 So. 2d 223 (¶10) (Miss. Ct. App. 1998) (citing *Ashley v. State*, 538 So. 2d 1181, 1183 (Miss. 1989)). "To support a conviction for burglary, the State must present sufficient evidence to establish each element of the crime." *Ward*, 726 So. 2d at (¶10).

¶23. Count II of the indictment issued against Pool was for the grand larceny of the Gravely tractor and Big Wheel Yazoo push mower. Grand larceny is defined in this State as:

> Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Two Hundred Fifty Dollars ($250.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the penitentiary for a term not exceeding five (5) years; or shall be fined not more than One Thousand Dollars ($1,000.00), or both.

Miss. Code Ann. § 97-17-41 (Supp. 1998). "A critical part of the code definition of grand larceny is the specific intent to steal." *State v. Smith*, 652 So. 2d 1126, 1127 (Miss. 1995) (citing *Strong v. Nicholson*, 580 So. 2d 1288, 1294 (Miss. 1991)). "Grand larceny requires evidence of specific intent to deprive the owner of his property wholly and permanently." *Smith*, 652 So. 2d at 1127 (quoting *Slay v. State*, 241 So. 2d 362, 364 (Miss. 1970)).

¶24. Pool opines that he could not be tried and convicted for both grand larceny and burglary of a dwelling as the underlying felony for the burglary was grand larceny. "Double jeopardy protection applies to successive prosecutions for the same criminal offense." *White v. State*, 702 So. 2d 107, 109 (Miss. 1997) (citing *United States v. Dixon*, 509 U.S. 688, 694 (1993)). "[W]here the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." *White*, 702 So. 2d at 109 (quoting *Dixon*, 509 U.S. at 696).

¶25. It is quite clear that Pool was indicted and convicted of two very separate criminal offenses. Under Count II, the burglary charge, Pool broke and entered into the dwelling house of Crotts's with the intent to commit a crime therein. His crime was grand larceny. Under Count II, the grand larceny charge, Pool went on Crotts's property and took and carried away personal property of Crotts, namely a cultivator and mower from a shed, which had a value of over $250. The grand larceny charge did not arise out of a common temporal nucleus of operative facts. The burglary and grand larceny were separate and completely different incidents. There is no merit to Pool's fourth assignment of error.

## V. THE VERDICT OF GUILTY OF BURGLARY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND CONTRARY TO LAW, AS THERE WAS NO EVIDENCE PRESENTED THAT THE DEFENDANT BROKE AND ENTERED THE PROPERTY.

¶26. In his last assignment of error, Pool argues that his burglary conviction was against the overwhelming weight of the evidence.

> When reviewing a jury verdict of guilty we are required to accept as true all the evidence favorable to the State, together with reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such will support a verdict of guilty beyond reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, then the jury verdict shall not be disturbed.

*Montgomery v. State*, 515 So. 2d 845, 848 (Miss. 1987) (citing *Hester v. State*, 463 So. 2d 1087, 1091 (Miss. 1985); *Carroll v. State*, 396 So. 2d 1033, 1035 (Miss. 1981)).

¶27. We will not order a new trial unless this Court is convinced that "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice."*Noe v. State*, 628 So. 2d 1368, 1369 (Miss. 1993) (quoting *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987)).

¶28. Pool argues that his conviction is against the overwhelming weight of the evidence because no one saw him break and enter the house in question, no one saw him leave the house, and no one saw his truck at the house. Also none of the items that were said to be in Crotts's home were found at Pool's house and Pool's fingerprints were never found at the Crotts's home.

¶29. The State need not prove any of the above for a conviction of burglary. A defendant's possession of stolen articles may be sufficient to prove burglary beyond a reasonable doubt, given sufficiently probative circumstances of possession. *Shields v. State*, 702 So. 2d 380, 382-83 (Miss. 1997). "[T]he inference of participation in the crime drawn from possession of the fruits of the crime is to be judged like any other inference, that is, on the strength of that inference in the light of the facts of each particular case." *Id.* at 382 (citation omitted). "The circumstances of possession and the presence or absence of evidence of participation in the crime other than mere possession must be viewed." *Id.* The circumstances include:

    1. The temporal proximity of the possession to the crime to be inferred;

    2. The number or percentage of the fruits of the crime possessed;

    3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;

    4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.

*Id.* at 383.

¶30. All four of the inferences are present in this case. Pool sold many of the items he took from the home. Pool returned items taken from the home. Under the second circumstance, it was determined that Pool had once been in possession of the items stolen. The third circumstance can be inferred from Pool's admittance to officers that he had some of the items taken from the Crotts's home. Last, Pool offered no explanation for his possession of any of the stolen items.

¶31. Based on the foregoing, the judgment of burglary is not against the overwhelming weight of the evidence.

¶32. **THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF COUNT I BURGLARY OF A DWELLING AND SENTENCE OF TWENTY YEARS WITH TEN YEARS SUSPENDED; COUNT II OF GRAND LARCENY AND SENTENCE OF FIVE YEARS WITH TWO YEARS SUSPENDED TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.**

**BRIDGES, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., AND DIAZ, J. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. MOORE AND IRVING, JJ., NOT PARTICIPATING.**

KING, P.J., DISSENTING:

¶33. I respectfully dissent. This case does not involve a misnomer of address as the majority suggests. The error in the indictment in the present case is a matter of substance which altered the identity of the offense and Pool's theory of defense.

¶34. Lamar Crotts, the victim in this case, resided at 110 Lee Street[1]. Mr. Crotts owned property described in the record as "home off of West 588 [2]." It was the house off of West 588 which was burglarized. Mr. Crotts testified that he had not lived in the house for four years. Mr. Crotts, age eighty-eight at the time of the hearing, testified that failing health forced him to leave his home to live with his nephew on Lee Street. Mr. Crotts lived with his nephew but returned periodically to check on the house off of West 588. There was no mention of Mr. Crotts's intention to return to the house off of West 588 when his health improved. *See Course v. State*, 469 So. 2d 80 (Miss. 1985). ¶35. Pool was indicted and convicted of burglary of an inhabited dwelling under Miss. Code Ann. § 97-17-21 (Supp. 1998). The record reveals that the structure located "off West 588" may not qualify as a dwelling under §97-17-21. If the house off of West 588 did not qualify as an inhabited dwelling, that failure would be a defense to this charge. Because an indictment which charges the burglary of an inhabited dwelling cannot be amended during trial to charge the burglary of some building other than an inhabited dwelling, I would reverse and remand this matter for a new trial. *Woods v. State*, 186 Miss 567, 98 So. 63 (1923).

McMILLIN, C.J., DISSENTING:

¶36. I dissent. In my view, this Court should note a fundamental flaw in the State's proof going to the heart of a charge of burglary of a dwelling and reverse and render Pool's burglary conviction.

¶37. I disagree with my colleague's, Judge King's, dissent that the amendment ought not to have been allowed. To that extent, I am in agreement with the majority. My review of the record convinces me that the State intended at all times to allege a burglary of Crotts's house located on Highway 588 and that the defense fully understood that fact. That is a different situation from one where the State originally believed the crime occurred at one location but learned, post-indictment, that it actually occurred at another place. I would compare the situation before us to the case of *Parchman v. State,* 279 So. 2d 602 (Miss. 1973). In that assault case, the State was permitted at trial to amend the indictment to change the name of the victim from Harmon Rainey to his brother, Grady Rainey. *Id.* at 603. The Mississippi Supreme Court, in the *Parchman* case, drew the distinction between an amendment to properly identify the person intended to be named and an amendment to change the actual identity of the victim. In doing so, the court said:

> With respect to amendments which seek to change the name or description of a person to which the indictment refers, it has been held that changes which conform the indictment so as to correctly name the person intended by the grand jury are allowable. However, if the amendment results in changing

the identity of the person, so as to name a person other than the one intended by the grand jury, it is a substantive change and is not allowed.

*Id.* I see no reason why this reasoning should not apply with equal force to changes in the description of a particular location.

¶38. It is evident from reviewing the record that the defense understood from the inception that the State intended to charge a burglary of Crotts's Highway 588 house, so that the amendment could not possibly have prejudiced Pool in the preparation of his defense. Therefore, the amendment was not one of substance on the particular facts of this case.

¶39. However, my review of the record to determine whether there was some indication that Pool might actually have believed that he was charged with burglarizing the 110 Lee Street property revealed the following exchange during defense counsel's cross-examination of investigating officer Terry Yates, which I find significant for two reasons:

> Q. Now Mr. Crotts - he didn't live at that house, did he?
>
> A. No, sir, due to his health he was living with his nephew, Gary.

¶40. One thing this line of inquiry does is erase any possibility that the defense misunderstood the true nature of the charges against Pool. However, the second and more troubling aspect of the exchange, unchallenged by the prosecution and not the subject of any evidence to the contrary, is that it is a concession by the State that the structure was not in use as a dwelling at the time of the break-in. Mississippi law is quite clear that a structure not currently in use as a dwelling, no matter how well-suited it might be for that purpose, cannot be a "dwelling" in the sense contemplated under the law of burglary. *Watson v. State*, 254 Miss. 82, 179 So. 2d 826, 827 (1965); *Haynes v. State,* 180 Miss. 291,177 So. 360, 361 (1937).

¶41. Thus, it was not the act of amending the indictment that damaged Pool in the defense of the burglary charge. It was the failure of defense counsel (and apparently the prosecution, also) to grasp the fact that, whatever crime Pool may have committed, he could not have committed a burglary of a dwelling. Further, since burglary of a structure other than a dwelling is a separate crime from burglary of a dwelling (*see Woods v. State,* 186 Miss. 463, 191 So. 283, 284 (1939)), the State's proof was, by the admission of its own witnesses, insufficient to support any form of a burglary conviction.

¶42. In arriving at this conclusion, I am aware of the case of *Course v. State*, where the Mississippi Supreme Court affirmed a burglary of a dwelling conviction when the proof showed the owner was ninety years old and had been in a nursing home for several months prior to the break-in. *Course v. State,* 469 So. 2d 80, 81-82 (Miss. 1985). That case is distinguishable because, in *Course,* the State presented evidence that the owner "intended to return [to the home] when her health permitted," thus supplying the *animo revertendi* mentioned in *Haynes* necessary to preserve the structure's status as a "dwelling." *Id.* at 81. The State, in the case before us, offered no evidence to support an inference that Crotts's four year absence from the Highway 588 property was anything other than permanent. That failure in the proof is fatal.

¶43. Because this failure in the State's proof was so fundamental, I would note it as plain error and reverse and render Pool's burglary conviction.

**SOUTHWICK, P.J., AND DIAZ, J., JOIN THIS SEPARATE WRITTEN OPINION.**

1. The address was also referred to as "1010 Lee Street" in other parts of the record.

2. Mr. Crotts was neither sure of the house number or street name.