LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Gloria Catling was found guilty in the Amite County Circuit Court of one count of grand larceny and three counts of fraudulent use of a debit card. On Count I, grand larceny, she was sentenced to eight years in the custody of the Mississippi Department of Corrections. On Counts II, III, and IV, fraudulent use of a debit card, she was sentenced to four years on each count. The sentences in Counts II, III, and IV were ordered to run concurrently to each other and consecutive to the sentence in Count I, for a total sentence of twelve years. The trial court denied Ca-tling’s motion for a judgment notwithstanding the verdict and motion for a new trial.
 

 
 *297
 
 ¶ 2. Catling now appeals, asserting the following issues: (1) the evidence was insufficient to support the jury’s verdict on Count I, and alternatively, the verdict is against the overwhelming weight of the evidence; and (2) the verdicts in Counts II, III, and IV are against the overwhelming weight of the evidence. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 3. Juanita Johanningmeir hired Catling to sit with her ill husband. After Catling had been working at the couple’s home in Amite County, Mississippi, for approximately one month, Juanita noticed several unauthorized charges on her debit card. Payments of $208 and $283.14 were made to Dish Network, and a payment of $168.33 was made to Direct General Insurance. Juanita also noticed three rings were missing from her jewelry box.
 

 ¶ 4. Juanita reported the three missing rings and charges to the Amite County Sheriffs Department. A deputy went to Catling’s home to question her about the money and jewelry. The next day, Retta Catling (Retta), Catling’s mother, came to Juanita’s house. Juanita testified that Retta denied knowledge of the missing rings and left, but she returned to Juanita’s house thirty minutes later with four rings. Juanita testified that she did not realize one of the rings was missing. Ret-ta testified that she believed the rings were a gift to Catling from Juanita.
 

 DISCUSSION
 

 I. GRAND LARCENY
 

 ¶ 5. Catling was convicted of grand larceny under Mississippi Code Annotated section 97-17-41(1) (Rev.2006), which states:
 

 Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the Penitentiary for a term not exceeding ten (10) years; or shall be fined not more than Ten Thousand Dollars ($10,000.00), or both. The total value of property taken and carried away by the person from a single victim shall be aggregated in determining the gravity of the offense.
 

 ¶ 6. Catling argues that she was, at the most, guilty of petit larceny because the State failed to prove beyond a reasonable doubt that the value of the jewelry was $500 or more. Catling also argues, in the alternative, that the State failed to prove that she took the rings without consent. We will discuss these arguments separately-
 

 A. Proof of Value
 

 ¶ 7. At trial, Juanita was asked to describe the missing rings. She stated that one ring had a “wide gold band with a center solitaire diamond on it with diamonds on each side.” One ring was a cocktail ring with a diamond in the center. One ring was a small gold signature ring. And another ring was a fourteen-carat-gold pinkie ring with “a mound of diamonds on it.... ” She testified that the cluster ring was worth more than $500, and none of the rings were costume jewelry.
 

 ¶ 8. In
 
 Thompson v. State,
 
 910 So.2d 60, 62 (115) (Miss.Ct.App.2005), the victim of grand larceny testified that the antique desk the defendant attempted to steal was worth approximately $3,000. She testified that the desk was purchased eighteen or nineteen years prior for $3,000.
 
 Id.
 
 She also testified that she had seen a similar desk in a store for $4,399.
 
 Id.
 
 The victim’s testimony was the only proof of value.
 
 Id.
 
 
 *298
 
 The statute in effect at the time stated that the value of the item taken must be at least $250.
 
 Id.
 
 at (¶ 4). In affirming the conviction, this Court held: “For the purposes of this case, it was not necessary to establish a precise value on the stolen desk but merely to establish that the desk had a value that was greater than $250.”
 
 Id.
 
 at (¶ 6). The Court further found that expert testimony was not required because “[i]t is common knowledge and not exclusively within the knowledge of an expert that antique furniture tends to appreciate, rather than depreciate, in value.”
 
 Id.
 

 ¶ 9. In determining whether a conviction is supported by the evidence, the evidence is considered in the light most favorable to the State.
 
 King v. State,
 
 798 So.2d 1258, 1261 (¶ 12) (Miss.2001). If a rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, the verdict will be beyond the court’s authority to disturb.
 
 Id.
 
 Juanita testified that the value of one of the rings was over $500. All the rings were fourteen-carat gold, and three of the rings had diamonds on them. Taking the evidence in the light most favorable to the State, we find that the evidence was sufficient for a rational trier of fact to find that the rings had a value of more than $500. If one ring was worth more than $500, then the jury could have inferred that the value of all the rings taken was over $500. This issue is without merit.
 

 B. Proof of Intent
 

 ¶ 10. “Grand larceny requires evidence of specific intent to deprive the owner of his property wholly and permanently.”
 
 State v. Smith,
 
 652 So.2d 1126, 1127 (Miss.1995). Catling contends that Juanita gave her the rings as a gift. Ca-tling testified as follows: “[Juanita] was going through her jewelry and ask [sic] me did I want them. I told her, yes, ma’am, including a bracelet with Jesus on it that she gave me along with the rings.” Ca-tling also testified that she wore the rings to work everyday for the five following days that she worked for Juanita. Juanita, however, testified that Catling took the rings without her consent.
 

 ¶ 11. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005). Viewing the evidence in the light most favorable to the verdict, we find that the guilty verdict was not against the overwhelming weight of the evidence. Juanita and Catling presented conflicting testimony, and it is well settled that the jury weighs witness credibility and resolves questions of fact.
 
 Davis v. State,
 
 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App. 2003). We find that allowing the jury’s verdict to stand does not sanction an unconscionable injustice. This issue is without merit.
 

 II. FRAUDULENT USE OF DEBIT CARD
 

 ¶ 12. Mississippi Code Annotated section 97-19-85(1) (Rev.2006) states in part:
 

 Any person who shall make or cause to be made any false statement or representation as to his or another person’s or entity’s identity, social security account number, credit card number, debit card number or other identifying information for the purpose of fraudulently obtaining or with the intent to obtain goods, services or any thing of value, shall be guilty of a felony....
 

 
 *299
 
 ¶ 13. Catling provided a written statement to law enforcement after her arrest, which states:
 

 I didn’t mean to do it but I did. Don’t remember how I did it but I did. Please tell Ms. Nita Johanningmeier that I am sorry. I used her debit card so she say to pay my insurance, dish network. Dish Network twice. I was at her home. Direct Insurance once. I was at her home.
 

 ¶ 14. Catling was found guilty of Counts II, III, and IV of the indictment. Count II charged that Catling:
 

 on or about November 3, 2008, did felo-niously and fraudulently make or cause to be made any false statement or representation as to her or another person’s identity or debit card number for the purpose of fraudulently paying Dish Network the sum of $208.00 or with the intent to obtain goods, services or any thing of value....
 

 Count III charged that Catling:
 

 on or about November 7, 2008, did felo-niously and fraudulently make or cause to be made any false statement or representation as to her or another person’s identity or debit card number for the purpose of fraudulently paying Dish Network the sum of $283.14 or with the intent to obtain goods, services or any thing of value....
 

 Count IV charged that Catling:
 

 on or about November 10, 2008, did feloniously and fraudulently make or cause to be made any false statement or representation as to her or another person’s identity or debit card number for the purpose of fraudulently paying Direct General Insurance the sum of $168.33 or with the intent to obtain goods, services or any thing of value....
 

 ¶ 15. The jury found that Catling used Juanita’s debit card number for the purpose of fraudulently obtaining money to pay her bills. Catling argues that the elements of the statute were not met because she was given permission to use the debit card. Catling testified that Juanita gave her permission to pay the bills with her debit card, and Juanita was present when the debit card was used. Catling explained that she asked Juanita if she could work extra hours to earn money to pay some of her bills, but Juanita told her the insurance would not allow the extra payment. Catling testified that Juanita wanted to help her pay the bills so she authorized the transactions. The Direct Insurance account was in Catling’s name, and the Dish Network account was in her mother’s name. Retta testified that Ca-tling called her on the phone to get the information for both accounts so Juanita could make the payments. Retta testified that she told Catling the account numbers over the phone, Catling repeated the numbers to Juanita, and she heard Juanita repeat the numbers Catling had said.
 

 ¶ 16. Juanita testified that she did not give Catling permission to use her debit card, and she did not authorize any transactions over the phone. Juanita testified that she discovered the charges while reconciling her bank statement. When Juanita questioned Catling about the charges, Catling’s response was that a bank employee could have made the charges.
 

 ¶ 17. Again, this issue presented a factual question to be resolved by the jury. It is the jury’s duty to weigh witness credibility and to resolve questions of fact.
 
 Davis,
 
 866 So.2d at 1112 (¶ 17). We find that this issue is without merit.
 

 ¶ 18. THE JUDGMENT OF THE AM-ITE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, GRAND LARCENY, AND SENTENCE OF EIGHT YEARS; COUNTS II-IV, FRAUDULENT USE OF DEBIT CARD,
 
 *300
 
 AND SENTENCE OF FOUR YEARS EACH ON COUNTS II-IV, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES IN COUNTS II-IV TO RUN CONCURRENTLY AND TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO AMITE COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.