540 So.2d 1 (1989)
Joe WRIGHT and Johnny Wright
v.
STATE of Mississippi.
No. 58155.
Supreme Court of Mississippi.
February 22, 1989.
*2 Cleve McDowell, Drew, for appellants.
Mike Moore, Atty. Gen. by John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
Appellants herein, Joe Wright and Johnny Wright were indicted by a grand jury in the First Judicial District of Bolivar County, Mississippi, for the burglary of an inhabited dwelling. They were tried and convicted in the Circuit Court of Bolivar County. Joe Wright was sentenced to two twelve (12) year concurrent terms and Johnny Wright was sentenced to one twelve (12) year term. From these convictions and sentences the Wrights have perfected this appeal, and assign as error:
1. THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE.
2. THE TRIAL COURT ERRED IN REFUSING TO GRANT THE APPELLANTS' MOTION FOR A MISTRIAL WHEN THE STATE'S WITNESS, JERRY CLEVELAND, TESTIFIED THAT HE HAD BEEN "THREATENED."
3. COUNT II OF THE INDICTMENT CONSTITUTES DOUBLE JEOPARDY AS TO THE APPELLANT JOE WRIGHT.

FACTS
During the early morning hours of August 28, 1986, the home of Ethel Mae Washington at 508 Brown Street in Rosedale, Mississippi, was burglarized. Mrs. Washington testified that perhaps through the Savior's help she awoke in the early hours of that morning and saw a light shining in her kitchen. Being under no misapprehension that the light indicated a supernatural visitation, her feet hit the floor and she said, "God damn you, let me get my pistol. I'll get you out of my kitchen with a flashlight." She was unable to make good her threat, however, since, without her walker, she was unable to move swiftly. The intruders fled through the kitchen and back door, taking care to close the kitchen door as they left.
Approximately 4:31 a.m., Mrs. Washington contacted the local police reporting to dispatcher, Floyd Moorhead, a/k/a "Frog," what happened. Frog called patrolman Freddie Williams and informed him of the break-in. Officer Williams proceeded to Mrs. Washington's residence to investigate. Mrs. Washington told him she had discovered someone in her house and gave him a list of items she discovered were missing, among which was her television, a clock, two electric fans, an antique clock, and her purse and wallet. Additionally, the intruders took four pistols, coins stored in a Dristan bottle, a watch and dinner ring, cash including a bank book containing a $2 bill, and part of a roll of Scott paper towels with a specific design on it.
It was apparently a restless night in Rosedale. In the early morning hours of August 28th, Tollie Sterling, who lives in close proximity to Washington's house, had been unable to sleep, so at 3:00 a.m. he went to a "Mr. Quick" convenience store for a cup of coffee. After finishing a second cup, he saw three black males break and run from the direction of Washington's house. One of these men had something in *3 his hands and was wearing a straw hat. Sterling reported to Officer Williams that he had seen the one with the straw hat earlier that night at "Mr. Quick." Officer Williams at that point remembered that he also had seen Jerry Cleveland earlier that morning at the same Mr. Quick store, wearing a straw hat. Officer Williams recalled seeing the appellants standing behind an ice box in the parking lot at the same time.
Officer Williams immediately began searching for Jerry Cleveland. Cleveland was found at appellant Johnny Wright's residence at about 5:00 a.m. Appellant Joe Wright was also there. Cleveland admitted to Officer Williams that he and his half brothers, the Wrights, had burglarized Mrs. Washington's house and told them where her property had been hidden. The antique clock was found near a railroad track some 200 yards from Mrs. Washington's house. Three pistols were found at Cleveland's girlfriend's house in a paper sack. At this point Cleveland, one Willie Beatie, and appellants were arrested. They were delivered to Deputy Moorhead, who took their personal effects for safekeeping. A $2 bill was taken from appellant Johnny Wright at that time.
Officer Spencer Arbuckle of the Rosedale Police Department was present when Cleveland, Beatie and appellants were processed. He testified that five $1 bills and some white paper towels with a design were found on appellant Joe Wright. These paper towels were later identified as of the same type as those taken from the Washington house. Mrs. Washington later identified the $2 bill as hers.
One witness identified the appellant Joe Wright and Jerry Cleveland as having been seen by him running from the direction of Mrs. Washington's house as he was leaving his girlfriend's house about 1:30 a.m. Cleveland's girlfriend testified that he had come by her house early the morning of August 28th. He left and came back with appellant Joe Wright with him. She testified at the time Cleveland was wearing a straw hat.
Jerry Cleveland, who testified for the State, said he and his accomplices thought Mrs. Washington's house was vacant. At approximately 10:30 p.m. they entered the house and found Mrs. Washington asleep. They took a TV and two fans. Later, between 11:30 p.m. and 12:00 a.m., Cleveland and appellant Joe Wright went back to Washington's house and this time took the pistols. They went to Cleveland's girlfriend's house where Cleveland hid the pistol unbeknownst to his girlfriend. Having successfully entered and left Washington's house two times, Cleveland, accompanied by both appellants, Joe and Johnny Wright, went back to Mrs. Washington's house a third time at approximately 1:30 a.m. This time they found money. During the burglary, Mrs. Washington woke up. It was at this point that Mrs. Washington spotted the light in the kitchen and chased the intruders out.
Joe and Johnny Wright were indicted for burglary of an inhabited dwelling. Counts I and II were returned against appellant Joe Wright and Johnny Wright was indicted on Count II. They appeal their conviction and make the following assignments of error:

I. WAS THE VERDICT OF THE JURY NOT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE?
The record shows that appellants filed a motion for a new trial which contained a challenge to the sufficiency of the evidence. The record does not show that the trial court ever ruled upon the appellant's motion for a new trial, however. Moreover, it appears that no motion was made by appellants at the conclusion of the presentation of evidence for a directed verdict.
In Harris v. State, 413 So.2d 1016, 1018 (Miss. 1982), we held:
It is elemental that after a motion for directed verdict is overruled at the conclusion of the State's evidence, and the appellant proceeds to introduce evidence in his own behalf, the point is waived. In order to preserve it, the appellant must renew his motion for a directed verdict at the conclusion of all the evidence. Ross v. State, 234 Miss. 309, 106 So.2d 56 (1958); Fields v. State, 293 So.2d 430 (Miss. 1974). Also see State v. Russell, 358 So.2d 409, 413 (Miss. 1978).
*4 The appellants waived error, if any, in the court's refusal to grant them a directed verdict at the close of the State's case-in-chief when they proceeded to present evidence in their behalf. Because they did not renew this motion by way of a motion for a directed verdict at the conclusion of the evidence or via a motion for a peremptory instruction, any objection they may have had to the sufficiency of the evidence is waived. Harris v. State, 413 So.2d 1016, 1018 (Miss. 1982). Furthermore, it does not appear in the record that the motion for a new trial was ever ruled upon by the trial court. It is the responsibility of the movants to obtain a ruling on all motions filed by them, and the failure to obtain a ruling constitutes a waiver. Martin v. State, 354 So.2d 1114, 1119 (Miss. 1978). Consequently, this assignment of error is not properly before this Court.

II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE APPELLANTS' MOTION FOR A MISTRIAL WHEN STATE'S WITNESS, JERRY CLEVELAND, TESTIFIED THAT HE HAD BEEN THREATENED?
The appellants argue irreparable harm was done to them when Cleveland testified implying the appellants threatened him.
The appellants provide no citation to authority in support of this assignment of error. Hence, it is not properly before the Court. Redmond v. State, 457 So.2d 1344 (Miss. 1984); Smith v. State, 430 So.2d 406 (Miss. 1983); Gandy v. State, 373 So.2d 1042 (Miss. 1979). However, we address the assignment and find it has no merit.
Upon examining the relevant testimony, we find the prosecutor was attempting to elicit from Cleveland what might happen to him at Parchman as a result of Cleveland's testimony for the State.
The record clearly indicates the trial court stopped the prosecutor's questioning sua sponte and gave the jury a strong admonition to disregard the testimony. The jury was polled and each juror's response indicated they would disregard the testimony. Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error. Wetz v. State, 503 So.2d 803, 810 (Miss. 1987); May v. State, 460 So.2d 778, 783 (Miss. 1984); Herron v. State, 287 So.2d 759, 766 (Miss. 1974). This assignment of error is without merit.

III. DOES COUNT II OF THE INDICTMENT CONSTITUTE DOUBLE JEOPARDY AS TO APPELLANT JOE WRIGHT?
A multi-count indictment was returned against Jerry Cleveland and appellants by the Bolivar County Grand Jury on October 7, 1986. Appellant Joe Wright was charged in both counts of this indictment with two separate burglaries of Mrs. Washington's house. Joe Wright contends that Count Two of this indictment constitutes double jeopardy as to him. He claims his two entrances into Mrs. Washington's house was one continuous crime. The appellant did not at any time in trial court mount an attack on the indictment on any ground, nor did he at any time prior to, during or after the trial, raise a double jeopardy question. The appellant had not cited any authority for this assignment and procedurally should be barred by this Court. Smith v. State, 445 So.2d 227, 229 (Miss. 1984).
In considering the issue the question presented is whether the intrusions into Mrs. Washington's house constituted an ongoing burglary or two distinct crimes.
The elements necessary to convict a defendant of the crime of burglary are (1) the burglarious breaking and entering of a dwelling, and (2) the intent to commit a crime therein. See, e.g., Jackson v. State, 483 So.2d 1353 (Miss. 1986). This is to say that this crime is complete upon a showing of these elements.
Jerry Cleveland testified that after he and Willie Beatie left Mrs. Washington's house, he went to the Starlite Cafe and there met appellant Joe Wright. Beatie had gone home. Cleveland told appellant about the first burglary at the Starlite, and it was there that appellant decided to break into and enter Mrs. Washington's house. Cleveland and this appellant went back to *5 Washington's house, turned the knob to the door, and went in. The pistols were taken during this incursion. Cleveland testified that this occurred at about 12:00 a.m. They left the house, went to their mother's house, then went to Cleveland's girlfriend's and then went to Mr. Quick for orange juice and cigarettes. Appellant Johnny Wright at some point during this time joined his brothers.
After buying the orange juice and cigarettes, all three brothers went back to Mrs. Washington's house, opened the door, and walked in and rambled around.
Cleveland's testimony establishes, as to appellants, two wholly separate burglaries of Mrs. Washington's house. While it is true that the crimes occurred relatively close in time to each other, and that the victim of them was the same, it is equally true that there was a clear beginning and end to each of the three intrusions into the house. The crimes charged were complete upon the turning of the knob and entrance into the house through the kitchen door by appellants. Appellants' felonious intent was proved by the fact that they committed larceny while in the house. There were three burglarious entries into the house; appellant Joe Wright made two of them.
In Pharr v. State, 465 So.2d 294 (Miss. 1984), the appellant was charged with three counts of illegally headlighting deer. The acts proved to have been committed occurred the same night and, apparently, in very close points of time. This Court, in answer to that defendant's contention that he was subjected to a form of "triple-jeopardy," held that each act constituted a separate, actionable violation of law. To put the point another way, this Court rejected that defendant's contention that the entire evening of illegal deer hunting constituted one crime. In so holding, this Court stated:
Separate acts though committed close in point of time to one another may constitute separate criminal offenses [citations omitted].
Temporal proximity does not generate a judicial union of separate and distinct criminal acts, nor does the presence of a common nucleus of operative facts.

See also, Lee v. State, 469 So.2d 1225 (Miss. 1985); Ball v. State, 437 So.2d 423 (Miss. 1983).
Double jeopardy protects criminal defendants from being exposed to more than one prosecution for the same offense. It does not protect a defendant against different prosecutions for different offenses. Hughes v. State, 401 So.2d 1100 (Miss. 1981). It is not a legal analog to some sort of "blue light special" where a defendant, by having the foresight or good fortune to commit the same crime or different crimes in close connection to each other, gets two or more offenses for the price of one. Appellants' third assignment of error is without merit.

CONCLUSION
Finding no error in the trial court, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, and ANDERSON, JJ., concur.
PITTMAN, J., not participating.