## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CT-00703-SCT

*TOMMY WHITE a/k/a LARRY BURNSIDE*

*v.*

*STATE OF MISSISSIPPI*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/26/95 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. WEBSTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART;REVERSED AND RENDERED IN PART - 11/06/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/1/97 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Tommy White, a/k/a Larry Burnside, was convicted in the Circuit Court of Quitman County on one count of conspiracy to operate a chop shop (count I), one count of joint operation of a chop shop (count II), and one count of individually operating a chop shop (count III). White was sentenced separately on each count.

¶2. White appealed claiming that the verdicts were against the overwhelming weight of the evidence and that his convictions constituted double jeopardy. The Court of Appeals affirmed the convictions and denied White's motion for rehearing. White filed a timely petition for writ of certiorari which this Court granted.

¶3. Because this Court finds that the Court of Appeals erred in its application of the facts and law with regard to the issue of double jeopardy, White's conviction under count III is hereby reversed and

rendered. The decision of the Court of Appeals is affirmed as to count I and count II.

## Statement of Facts

¶4. In March of 1993, law enforcement officials received information that White might be involved in running a chop shop. After investigating these allegations, the officials were led to Darren Hill, White's accomplice. It was discovered that White was buying the stolen vehicles from Hill and selling the parts. Stolen items were discovered in White's salvage yard and inventoried during several searches of the property in March of 1993. White was indicted for conspiring to operate a chop shop (count I), joint operation of a chop shop (count II), and individually operating a chop shop (count III). White was convicted and sentenced separately on all three counts.

## Issue Raised for Certiorari Review

¶5. In his petition for writ of certiorari, White raises one issue. White contends that his convictions on count II and count III violate the double jeopardy clause because count II is one and the same as the offense charged in count III. White claims that he was charged twice for a single continuing transaction.

## Was this issue preserved for review?

¶6. White failed to raise this issue at trial. He first raises the issue in his appeal brief, but he failed to cite any authority in support of his position. In *Wright v. State*, 540 So. 2d 1 (Miss. 1989), a multi-count indictment was returned against the defendant charging him with two separate burglaries of the same house. The defendant claimed that his two entrances into the house constituted "one continuous crime." *Id.* at 4. This Court addressed whether the defendant had preserved the issue of double jeopardy for review:

> The appellant did not at any time in trial court mount an attack on the indictment on any ground, nor did he at any time prior to, during or after the trial, raise a double jeopardy question. The appellant had not cited any authority for this assignment and procedurally should be barred by this Court. *Smith v. State*, 445 So. 2d 227, 229 (Miss. 1984).

*Wright*, 540 So. 2d at 4. Although this Court found that the issue should be procedurally barred, this Court addressed the double jeopardy issue and found that it was without merit. *Id.* at 5.

¶7. In determining that the issue of double jeopardy should be procedurally barred, this Court cited *Smith v. State*, 445 So. 2d 227 (Miss. 1984). In *Smith*, this Court held that the "[a]ppellant does not show how or why double jeopardy will apply in a situation such as presents itself here. Under these circumstances the principle stated in *Ramseur v. State*, 368 So. 2d 842 (Miss. 1979) applies." *Smith*, 445 So. 2d at 229. In *Ramseur*, the appellant failed to cite any authority in support of his assignments of error. "Where assignments of error are unsupported by argument and authority, the court does not, *as a general rule*, consider them." *Ramseur*, 368 So. 2d at 844 (emphasis added).

¶8. The principle stated in *Ramseur* is not an absolute bar. It merely points out that this Court may, in its discretion, choose not to review an assignment of error that is not supported by authority. When this Court is confronted with a situation in which the appellant claims that he has been charged and convicted more than once for the same offense, however, this Court finds that the issue warrants

review as plain error.

## Double Jeopardy

¶9. Double jeopardy consists of three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969) (footnotes omitted).

¶10. This Court recently addressed the issue of double jeopardy in *Cook v. State*, 671 So. 2d 1327 (Miss. 1996):

> The Double Jeopardy Clause of the Fifth Amendment reads as follows, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This proscription "has been applied to the states through the Due Process Clause of the Fourteenth Amendment." *McNeal v. Hollowell*, 481 F.2d 1145, 1149 (5th Cir. 1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974) (citations omitted).

> Double jeopardy protection applies to successive prosecutions for the same criminal offense. *United States v. Dixon*, 509 U.S. 688, 694113 S. Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). The Supreme Court has also held that:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. . . . The same-elements test, sometimes referred to as the "Blockburger" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

> *Dixon*, 509 U.S. at 696, 113 S. Ct. at 2856 (citations omitted). In *Dixon*, the Court recognized that in *Grady v. Corbin,* 495 U.S. 508, 1105 S.Ct. 2084, 109 L.Ed.2d 548 (1990), it adopted an additional test that "a subsequent prosecution must satisfy a 'same-conduct' test to avoid the double jeopardy bar." *Id.* at 697, 113 S.Ct. at 2853. However, the Court concluded that "*Grady* must be overruled. . . . *Grady* lacks constitutional roots. The 'same conduct' rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Dixon*, 509 U.S. at 704, 113 S. Ct. at 2860. Thus, as the Supreme Court has articulated, the rule is again the "Blockburger" or "same-elements" test.

*Id.* at 1331.

¶11. The Court of Appeals failed to cite the relevant test or standard of review. The Court of Appeals merely made findings of fact that the evidence gathered on one visit by the investigators on March 6th was different from the evidence gathered on a later visit on March 18th. A review of the record indicates that this is an erroneous conclusion.[1]

¶12. A careful review of the facts shows that, acting upon a tip, law enforcement investigators obtained a search warrant for White's salvage yard, and, on or about March 1, 1993, Sergeant Roy

Wooten and Lieutenant Bill Ellis with the Mississippi Highway Patrol, searched and inventoried numerous items at the salvage yard, but they only seized and removed three pieces of that evidence. At the conclusion of the search, Wooten and Ellis asked White not to remove anything from the salvage yard. Wooten returned on the 17th and 18th of March, accompanied by Thomas Zimmer, an investigator with the National Insurance Crime Bureau. They brought with them the results of an NCIC computer search of stolen items. A number of items *listed on the March 1st inventory* were recovered and seized.

¶13. On or about March 6, 1993, Ellis and Wooten visited the residence of White's co-conspirator, Hill, and discovered a number of stolen vehicles. Hill's residence is several miles from White's salvage yard, and there is nothing in the record placing White at Hill's residence at any time. This is apparently the "separate evidence" to which the Court of Appeals was referring. That evidence, however, may go to proof of the conspiracy and possibly the joint operation of a chop shop, but, constrained by the language of the indictment and under the proof as presented in this record, would have little to do with a chop shop being operated solely by White, unless, in count II, White was being charged with the operation of a separate chop shop at Hill's residence, which is not supported by the record and cannot be inferred from the language in the indictment.[2]

¶14. The record is somewhat confusing. Ellis was never questioned on his role in the March 1st search, and the only testimony about that search comes from Wooten. However, Wooten's testimony is uncontroverted that the items seized on the 17th and 18th of March, were the same items listed on the inventory made on March 1st. This is evident from the defense's cross-examination of Wooten:

Q. Now, when you went back on the 17th or 18th, who went with you?

A. Myself and Investigator Bill Ellis and Mr. Tom Zimmer.

Q. Now is that when y'all went about the whole thing of itemizing all of these --

A. No, sir.

Q. When did you do that?

A. We did that on March the 1st.

Q. Okay. But the only thing that you did on March the 1st was to inventory and take with you three items; is that correct?

A. We took these three items on March 1st.

Q. Yes, sir.

A. We received so many serial numbers that it would take quite a bit of time to research the NCIC files to check those serial numbers as stolen which was impossible to do in a one day's time.

Q. Yes, sir.

A. We took those numbers, we requested that nothing be removed from the salvage yard, and if

we could trust him to do so, in turn --

Q. You did what?

A. If we could trust him not to. During the course of this, Mr. White arrived on the scene.

Q. All right, sir.

A. In turn, we were advised that nothing would be disturbed or removed. During the course of the next week or two investigation, we were required to take days off, different items of -- it just takes time to check that large number of serial numbers, and having developed and identified that certain numbers of serial numbers were, in fact, from stolen vehicles, we returned on March the 17th and recovered those items.

Q. Okay. And that's when Mr. Zimmer -- Zimmerman was with you? Zimmer--

A. Yes, sir.

Q. --was with you? And I believe he testified that you got -- is it seven motors?

A. A combination of them.

Q. Some of them were transmissions I believe, weren't they?

A. Yes, sir.

Q. Seven parts from seven vehicles?

A. Yes sir.

Q. Okay. And is it -- did you find anything missing from the time that you were there the first time until you came back on March the 17th or 18th?

A. No, sir. Everything was basically intact.

¶15. The chop shop statute under which White was charged and convicted is relatively new and loosely modeled after those passed by Congress and other states.[3] However, it is important to understand the nature of the charge before applying the single transaction test for a double jeopardy determination. A "chop shop" is defined in Miss. Code Ann. § 63-25-3 (1996) as:

[A]ny building, lot or other premise where one or more persons are or have been knowingly engaged in altering, destroying, disassembling, dismantling, reassembling or knowingly storing any motor vehicle or motor vehicle part known to be illegally obtained by theft, fraud or conspiracy to defraud, in order to either:

(i) Alter, counterfeit, deface, destroy, disguise, falsify, forge, obliterate or remove the identity, including the vehicle identification number of such motor vehicle or motor vehicle part in order to misrepresent the identity of such motor vehicle or motor vehicle part, or to prevent the identification of such motor vehicle or motor vehicle part; or

(ii) Sell or dispose of such motor vehicle or motor vehicle part.

¶16. If the "same elements test" as set out in *Cook* is correctly applied to the case at bar, it is apparent that White was charged twice for the same conduct, i.e., the operation of the chop shop which was searched and inventoried on March 1st, and from which evidence, all of which was inventoried on March 1st, was not seized until the 17th or 18th of March. White was not arrested after the March 1st search. He was merely asked to cooperate with the investigation, and was later indicted sometime after the return of the investigators on the 17th and 18th of March. No new evidence of a chop shop operation was discovered on the subsequent visit. White's protection against double jeopardy was therefore violated by count III of his indictment and his subsequent conviction on that charge.

¶17. In *People v. Oxendine,* 506 N.W.2d 885 (Mich. Ct. App. 1993), the Court of Appeals of Michigan was faced with a similar case wherein it found that multiple convictions for operating a chop shop, altering VINs, and receiving and concealing stolen property did constitute double jeopardy. The Michigan court framed the issue and test as "whether two convictions involve the same offense for purposes of the protection against multiple punishment is solely one of legislative intent." *Id.* at 886 (citing *People v. Sturgis*, 397 N.W.2d 783 (Mich. 1986)). The Michigan court held:

> This Court must use traditional means to determine whether the Legislature intended to permit multiple punishment and examine the subject, language, and history of the statutes involved. [*People v. Robideau,* 355 N.W.2d 592, 603 (Mich. 1984).] Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishment. [*Id.* at 604.] A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. Where the Legislature has taken conduct from a base statute and increased the penalty for aggravated conduct, it in all likelihood did not intend punishment under both statutes. [*Id.*]

*Oxendine*, 506 N.W.2d at 887.[(4)]

¶18. However, using either the *Blockburger* or this legislative intent test, and even distinguishing the *Oxendine* decision as considering two separate statutes, this case must still fail as it appears both counts of operation of a chop shop (counts II and III) arise from not only a single transaction, or series of transactions, but also the same evidence and proof. In *Johnson v. Morgenthau,* 505 N.E.2d 240 (N.Y. 1987), the Court of Appeals of New York held that the defendant could not be prosecuted for two separate counts of illegal possession of the same firearm in two separate counties or for his unlawful possession of the same weapon at different times and places during the six days he possessed it, even though he did not have the weapon on his person at all times, because the unlawful possession was a continuing offense. *Id.* at 242-43. In *Nesby v. City of Montgomery,* 652 So.2d 784 (Ala. Crim. App. 1994), however, the defendant was convicted of violating a city ordinance for failing to remove junk from her property even though she had been convicted of the same charge for the same junk a few months earlier. The defendant asserted in her appeal that the second conviction violated her rights against double jeopardy. The Court of Criminal Appeals of Alabama held that there was no double jeopardy violation inasmuch as the ordinance specifically provided that each day's infraction constituted a separate offense.

¶19. The chop shop statute, Miss. Code Ann. § 63-25-5 (1996), appears to address an offense that is

in the nature of a continuing criminal enterprise and, until stopped, or until a charge is made, constitutes but a single offense. That is, if one operates a chop shop from March 1st to March 31st, it is but one offense no matter whether the individual received a stolen car each day, every other day, or once per week. If White were charged with the operation of the chop shop on March 1st, and thereafter found to be again operating a chop shop on March 31st, either in the same or another location, a separate charge *may* lie, but the second charge could not be based solely on the same evidence used in the March 1st charge as apparently was done here.

¶20. The prosecutor has broad discretion in filing charges, and the record is utterly void of reasons why the indictments were brought in this manner. However, no less than nine separate stolen automobiles, or the parts thereof, were discovered on White's property. At least that many separate counts of receiving stolen property could have been brought against White in addition to § 63-25-5 and the conspiracy charge, all which could have survived a double jeopardy challenge as, under our statutes, and using the *Blockburger* test currently favored by this Court, the elements of proof of each charge would have been different.

## Conclusion

¶21. The Court of Appeals erred in both its analysis of the facts and application of the law under established precedent dealing with the issue of double jeopardy as presented in this case. White's conviction and sentence under count III is reversed and rendered. White's convictions and sentences under count I and count II are affirmed.

¶22. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

1. On page 4 of the Court of Appeals opinion, the Court states "Thomas Zimmer of the National Insurance Crime Bureau testified that when he visited the salvage yard on March 18th, there were several stolen items found. None of the vehicles or parts of vehicles found by Zimmer appears to match those found by Thomas." Unfortunately there was no investigator nor any other witness named Thomas. Furthermore, the evidence gathered on March 6th, by a law enforcement investigator named Ellis was obtained at the residence of White's co-conspirator, Darren Hill, several miles from White's shop.

2. The record does not include the opening or closing arguments and the jury instructions are of little help on this point. It is therefore difficult to ascertain exactly where the prosecution was going with the evidence of the vehicles discovered on the March 6th search at Hill's residence, other than the fact that there was some on-going conspiracy to steal, dismantle, and re-sell same as salvage or as parts. None of the charges in the multi-count indictment or jury instructions in this case refer to March 6, 1993, nor is there any information in the record as to with what, if anything, Hill may have been charged and/or convicted.

3. The statute in question, Miss. Code Ann. § 63-25-5 (1996), reads in relevant part:

> (1) Any person who knowingly and intentionally: (a) owns, operates or conducts a chop shop; (b) transports any motor vehicle or motor vehicle part to or from a location knowing it to be a chop shop; or (c) sells, transfers, purchases or receives any motor vehicle or motor vehicle part either to or from a location knowing it to be a chop shop, shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not more than fifteen (15) years and by a fine of not more than One Hundred Thousand Dollars ($100,000.00).

4. The *Robideau* decision cited above had previously rejected and abandoned that state's use of the *Blockburger* test currently used by this Court in favor of this legislative intent test.