783 So.2d 771 (2000)
Larry Darnell JONES, Appellant,
v.
STATE of Mississippi, Appellee,
No. 1999-KA-01924-COA.
Court of Appeals of Mississippi.
November 28, 2000.
Rehearing Denied February 13, 2001.
Certiorari Denied April 26, 2001.
*773 Glenn F. Rishel Jr., Attorney For Appellant.
Office Of The Attorney General By John R. Henry Jr., Booneville, Attorney For Appellee.
BEFORE McMILLIN, C.J., LEE, AND PAYNE, JJ.
LEE, J., for the Court:
¶ 1. Larry Darnell Jones was charged with a two count indictment. The first count of the indictment charged Jones with capital rape, and the second count charged him with the touching of a child for lustful purposes. Jones was only convicted for the second count of touching a child for lustful purposes. Jones filed a timely appeal from his conviction and asserted the following three issues: (1) whether the verdict is contrary to the law, (2) whether the trial court erred by denying Jones's motion for a judgment notwithstanding the verdict, and (3) whether the trial court erred by denying Jones's motion for a new trial. Finding these issues without merit, accordingly, we affirm the trial court and uphold Jones's conviction.

FACTS
¶ 2. At the center of this case is D.B., the alleged victim of Jones from which the charges of capital rape and touching of a child for lustful purposes derived. Then there is Jane Doe, who resided in the same apartment complex as D.B. Although not related to D.B., D.B. referred to Doe as "Auntie." Doe was deceased at the time of trial. Next, there is Jones, who lived in the apartment with Doe and who classified his relationship with Doe as one of "lovers." Additionally, there is D.B.'s mother and Smith, again, although not related to D.B., Smith referred to D.B. as her "god-daughter." *774 There was also testimony at trial from a nurse practitioner. Furthermore, there was testimony at trial from Detective Rosario Ing.
¶ 3. At the trial of this matter, it was established that the apartment D.B. lived in was located in the same apartment complex as Doe. In fact, their apartments were within walking distance of each other. In October 1997, D.B. spent the night at Doe's apartment. It was established that at this time Jones also lived in the apartment with Doe. On an unspecified night in October, sometime prior to October 14, 1997, D.B. testified that she was asleep on the couch in Doe's apartment and was awakened because Jones was on top of her. D.B. asserted that Jones "put his private part inside of [her] and started moving around." D.B. said she screamed and tried to get him off of her. At the time this incident happened D.B. was fully clothed. She was wearing a shirt, a skort (i.e., shorts with a wrap around skirt in the front), and her panties. Eventually, Jones removed himself off of D.B. D.B. remained on the couch until the next morning.
¶ 4. On approximately October 14, 1997, there was a block party at the apartment complex where both Doe and D.B. resided. D.B.'s mother, D.B., and her other two siblings attended the block party. Doe also attended the party. D.B.'s mother testified that Doe had inquired whether D.B. could spend the night with her, and she agreed to let her. Thereafter, D.B.'s mother, D.B., and her siblings were leaving the block party, D.B.'s mother informed her that she was going to spend the night with Doe at her apartment. It was at this time, D.B. informed her mother that Jones had touched her.
¶ 5. D.B.'s mother testified that D.B. informed her that she did not want to go to Doe's to spend the night because Jones had "messed" with her. D.B. told her that Jones had done "nasty stuff" to her. This information made D.B.'s mother upset, and she called Smith. D.B.'s mother informed Smith that D.B. needed to talk with her.
¶ 6. Smith testified that when D.B.'s mother arrived with D.B. she was "shaken up and scared." Smith explained that D.B. was crying, had swollen eyes and was just a "nervous wreck" when she first saw her. Upon the request of Smith, D.B.'s mother left D.B. to talk with her. Smith stated that D.B. communicated to her that Jones had been "messing with her" by putting his hand on her "private." Additionally, Smith asserted that D.B. had enunciated that Jones had put his sweaty body on hers and that he smelled bad. Smith explained to D.B. that what she was saying could alter Jones's life if she was lying. D.B. said, "Grandma, you don't believe me but I'm telling the truth." Smith said, "I didn't say I didn't believe you but I want you to be sure of what you're saying." However, beyond this recollection Smith explained that it had been more than two years since the incident occurred, and she could not say word for word what D.B. had told her. Additionally, Smith testified that she had a doctor's appointment the next day and took D.B. with her to be examined.
¶ 7. On October 15, 1997, D.B. was examined by a nurse practitioner. The nurse testified that prior to her examination of D.B., D.B. had stated:
"she was visiting that weekend with her aunt and that she was asleep, it was during the night, and when she woke up, I believe the gentleman's name was Larry, she said her aunt's boyfriend was on top of her and trying to put his penis into her, what she called her private spot. And she tried to make him stop several times and kept saying no, no, no. And said the only way she could finally *775 get away from him was to wiggle out from under herunder him rather."
Additionally, D.B. informed her that it hurt, and that her aunt was there asleep in the next room.
¶ 8. The physical examination performed by the nurse practitioner did not reveal signs of actual sexual penetration, but there were external abrasions over the labia area, as well as areas where her pubic hair was denuded or rubbed off. The genital area of D.B. was red. Furthermore, the vulva vaginal area was "very red and tender and sore to touch." Therefore, the nurse did not conclusively rule out sexual molestation. Subsequently, D.B. reported the incident to the police department.
¶ 9. Detective Ing testified that she interviewed D.B. regarding her allegations against Jones on October 16 and 17 of 1997. Detective Ing stated that D.B. had not related inconsistent stories during her interviews. As a result of the interview, Jones was arrested.
DISCUSSION
I. WHETHER THE VERDICT IS CONTRARY TO THE LAW.
II. WHETHER THE TRIAL COURT ERRED BY DENYING JONES'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
AND
III. WHETHER THE TRIAL COURT ERRED BY DENYING JONES'S MOTION FOR A NEW TRIAL.
¶ 10. All of the issues asserted by Jones deal with either the sufficiency or weight of the evidence. The State asserts that Jones is procedurally barred from asserting an argument based on the sufficiency of the evidence presented at trial because he failed to move for a directed verdict or peremptory instruction at the conclusion of the case. Jones asserts that he properly preserved the issue because he moved for a directed verdict at the close of the State's case-in-chief, as well as requesting peremptory instructions. A review of the record discloses that Jones did ask for a directed verdict at the close of the State's case which was denied; nevertheless, he failed to ask for a directed verdict at the conclusion of the trial. However, Jones did submit peremptory instructions which were refused by the trial judge, as well as preserving the issue of sufficiency in his motion for JNOV; therefore, no procedural bar is applicable. We are able to come to this conclusion by referring to Wright v. State, which held that an appellant will waive error, if any, if the trial judge denies his motion for a directed verdict at the close of the State's case and he proceeds to present evidence on their behalf. However, an appellant may preserve the issue of sufficiency of the evidence for review on appeal if he requests either a directed verdict or a peremptory instruction at the close of the trial. Wright v. State, 540 So.2d 1, 4 (Miss.1989) (citing Harris v. State, 413 So.2d 1016, 1018 (Miss.1982)). Therefore, we will address all of the issues on their merits.
¶ 11. "Requests for a directed verdict and motions JNOV implicate sufficiency of the evidence." Franklin v. State, 676 So.2d 287, 288 (Miss.1996). When the trial court judges the legal sufficiency, as opposed to the weight of the evidence on a motion for a directed verdict, the trial court is required to consider evidence introduced in the light most favorable to the State and accept as true all of the evidence introduced at trial by the State, including all reasonable inferences that may be drawn therefrom. Yates v. State, 685 *776 So.2d 715, 718 (Miss.1996). Any evidence that is favorable to the defendant must be disregarded during the consideration of the trial court in determining whether to grant a motion. Id.
¶ 12. When the court is making a determination on whether to grant a judgment notwithstanding the verdict, the court is "not at liberty to direct that the defendant be discharged short of a conclusion... that given the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Hicks v. State, 580 So.2d 1302, 1304-05 (Miss.1991) (quoting Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983)). Additionally, inHicks v. State, 580 So.2d 1302, 1305 (Miss.1991), the Mississippi Supreme Court quoted from McFee v. State, 511 So.2d 130, 133-34 (Miss.1987), to repeat the standard which we as an appellate court are to apply in resolving the issue of whether the evidence is sufficient to sustain the jury's verdict:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidencenot just that supporting the case for the prosecutionin the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. (citations omitted).
¶ 13. Jones's arguments regarding whether the verdict was contrary to the law and whether the trial court erred in denying his motion for JNOV deal with sufficiency of the evidence. More particularly, Jones asserts that the State failed to prove each and every element of the crime of touching, handling, etc. of a child for lustful purposes as enumerated in Miss. Code Ann. § 97-5-23 (Rev.1994); therefore, the verdict was contrary to the law and merited the trial judge to grant his motion for JNOV. Specifically, Jones contends that the State failed to proved the element of touching. The State counters this argument and asserts that the testimony of the nurse corroborated the testimony of D.B. and proved that she had been handled, touched or rubbed, and the fact that D.B. was still wearing clothes is irrelevant under Miss.Code Ann. § 97-5-23 (Rev.1994). Miss.Code Ann. § 97-5-23 (Rev.2000) has been revised since Jones conviction; however, Miss.Code Ann. § 97-5-23 (Rev.1994) is applicable to the case at bar and reads as follows:
Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, shall be guilty of a high crime....
Therefore, the following elements that must have been proved by the State during the trial were: (1) that Jones was above the age of eighteen when the alleged act occurred, (2) he touched D.B. for the *777 purpose of gratifying his lust or depraved licentious sexual desire by either handling, touching, or rubbing D.B. with his hands or any part of his body or member, and (3) D.B. was under the age of fourteen when the alleged incident occurred.
¶ 14. The first element of the statute requiring Jones to be over the age of eighteen is met. At trial, it was established through Jones's own testimony that he was forty-five at the time of trial. The trial of this matter was held in August of 1999, and the incident was alleged to have transpired in October of 1997; therefore, it is abundantly clear that he was over the age of eighteen at the time of the alleged incident. The second element of the statute requires that the State prove that Jones touched D.B. to gratify his lust or depraved licentious sexual desires by either handling, touching, or rubbing D.B. with his hands or any part of his body or member. The State presented sufficient evidence for the jury to determine that this element had been proven. This evidence was mostly presented through the testimony of D.B. and the nurse.
¶ 15. D.B. testified that she was awakened because Jones was on top of her. Additionally, she testified that Jones "put his private part inside of [her] and started moving around." The nurse testified that her physical examination of D.B. revealed that there were no signs of sexual penetration, but there were numerous signs of external contact that could be related to sexual molestation.
¶ 16. It was also established through the testimony of D.B. that she was under the age of fourteen at the time of the alleged touching. At the trial in August of 1999, D.B. stated that she was eleven years old; therefore, it clearly establishes that since D.B. asserts that the assault occurred in October of 1997 she was under the age of fourteen at that time.
¶ 17. This Court accepts the evidence in the light most favorable to the State and determines there was sufficient evidence presented through the testimony of the witnesses to support the State's theory and allow the jury to decide if Jones was guilty of the touching of a child for lustful purposes.
¶ 18. Jones further contends that the trial court erred when it did not grant him a new trial because the verdict of the jury was against the overwhelming weight of the evidence. In Benson v. State, 551 So.2d 188, 193 (Miss.1989), the Mississippi Supreme Court provided the following explanation of when it would grant a new trial:
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
A motion for a new trial is within the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 397 (Miss.1985). This Court notes that while there was testimony which was given by witnesses that gave different versions of the night's events, the jury is the sole judge of the credibility of witnesses. Jowers v. State, 593 So.2d 46, 47 (Miss.1992); Dixon v. State, 519 So.2d 1226, 1228 (Miss.1988). A trial judge can take the case from the jury only where there is no testimony that would warrant the jury, if the witness were believed, in finding a guilty verdict. Price v. State, 207 Miss. 111, 41 So.2d 37, 40 (1949). The questions of whether there was physical contact between Jones and *778 D.B., as well as the extent of any touching, were issues of fact to be resolved by the jury. The essence of the testimony of D.B. stated that Jones had improperly touched her in her genital area. This testimony was supported by the physical manifestations of tenderness and redness that were observed and noted by the nurse practitioner during her physical examination of D.B. It is also worth noting that D.B.'s description of that night's events to her mother, Smith, and the nurse practitioner were relatively consistent. Jones did testify on his own behalf and denied that he did any of the acts described by D.B. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id.
¶ 19. It must be kept in mind that any discrepancies were properly resolved by the jury as fact finder because questions regarding weight and worth of witness testimony or witness credibility are for the jury to settle. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). The discrepancy in the testimony of D.B., her mother, Smith, and the nurse, as opposed to that of Jones goes to the issue of credibility and are to be decided by the jury. The evidence and any factual disputes that existed were accordingly resolved against Jones. Therefore, there was no abuse of discretion on behalf of the trial judge and these issues are without merit. We affirm the lower court.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN YEARS WITH FIVE YEARS SUSPENDED LEAVING FIVE YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO PAY FINE OF $3,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.