# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00924-COA

LAKINTA GOLDMAN A/K/A LAKINTA
LAVEGAS GOLDMAN A/K/A LAKINTA L.
GOLDMAN

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/08/2013 |
| TRIAL JUDGE: | HON. C.E. MORGAN III |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNTS I AND II, ARMED ROBBERY; COUNTS IV AND V, KIDNAPPING; AND COUNT VII, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCED, AS A HABITUAL OFFENDER, TO THIRTY YEARS EACH FOR COUNTS I AND II; THIRTY YEARS EACH FOR COUNTS IV AND V; AND TEN YEARS FOR COUNT VII; WITH THE SENTENCES FOR COUNTS I, IV, AND VII TO RUN CONSECUTIVELY TO EACH OTHER BUT CONCURRENTLY WITH THE SENTENCES IN COUNTS II AND V, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 05/05/2015 |

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., ROBERTS, FAIR AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     Lakinta LaVegas Goldman was convicted of two counts of armed robbery, two counts of kidnapping, and one count of possession of a firearm by a felon.  He was sentenced as a habitual offender to serve thirty years in the custody of the Mississippi Department of Corrections (MDOC) on each of the charges of armed robbery and kidnapping.  Goldman was also sentenced to ten years in the custody of the MDOC on the charge of possession of a firearm by a felon.  The sentences for one of the armed-robbery charges, one of the kidnapping charges, and the possession-of-a-firearm charge were ordered to run consecutively, and the sentences for the other armed-robbery and kidnapping charges were ordered to run concurrently, for a total of seventy years in MDOC custody.  Goldman filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial.  The trial court denied the motion.  Goldman appealed, and his counsel filed a *Lindsey*[1] brief on Goldman's behalf.  Goldman filed a supplemental pro se brief raising the following issues: (1) whether Goldman was denied effective assistance of counsel when counsel failed to request an impeachment instruction in support of Goldman's defense;[2] (2) whether the State failed to prove the basis for a habitual-offender sentence enhancement; and

---

[1] *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005).

[2] For purposes of clarity, the first two issues raised by Goldman have been combined and will be discussed together, and the issues have been restated.

(3) whether the trial court violated double jeopardy. Finding no error, we affirm.

**FACTS**

¶2. On May 22, 2012, at approximately 11 a.m., Karen Foreman was working as an assistant manager at the Dollar General in Duck Hill, Mississippi, along with a cashier, Shannon Bloom. At that time, one other customer was in the store, Angel Graham. Foreman was coming from the back of the store when she encountered a man wearing dark clothing and a mask. He had a gun and was threatening to shoot her. This man, along with another man similarly dressed, directed everyone in the store to kneel. Both Bloom and Graham testified that one of the men destroyed their cell phones and were violent and verbally abusive.

¶3. The man took Foreman to the back and started asking about the safe. Foreman told the man that the safe was in the front of the store at the registers. Foreman and the man went to the safe, and she gave the man the money in the safe, which was approximately $800. Foreman was told not to trigger the silent alarm, and a shot was fired. Foreman was then escorted to the back room and told to lie down with the other women in the store. Shortly thereafter, the women were told to run down a back aisle of the store; once they reached the end of the aisle, they were told to stay there. Foreman realized she had her cell phone with her and called 911. Within approximately five or six minutes, police were on the scene.

¶4. Deputy Tim Gholson of the Grenada Sherriff's Department spotted a 2002 GMC Yukon matching the description of the vehicle connected to the Dollar General store robbery. The vehicle was registered to Lakinta Goldman's wife. Deputy Ghoulson pursued the

3

vehicle, and while in pursuit, items were thrown from the vehicle. The vehicle then veered off the highway, through barbed wire, and into the woods. The occupants of the vehicle left the car and fled on foot into the woods.

¶5. The items recovered from the scene were the black masks and Angel Graham's purse, as well as a bag similar to the one seen on the video surveillance from the store. The driver was later identified as Goldman and the passenger was identified as Kunta Kinta Harbin. Harbin was apprehended later that day and identified Goldman as the other suspect. Harbin submitted to DNA testing and had his fingerprints taken. Harbin's fingerprints matched fingerprints recovered from the driver's side of the vehicle, and gunshot residue was also found around the fingerprints.

¶6. On May 26, 2012, Goldman turned himself in to the sheriff's department and was read his *Miranda*[3] rights. During the interview, Goldman stated that he was in Jackson, Mississippi, earlier on May 24, 2012, and bought $1,800 worth of marijuana. When returning to Duck Hill, he encountered Harbin stranded on the side of the road and offered to help. After picking Harbin up, Goldman committed a traffic violation and fled because of the marijuana in his vehicle.

¶7. On April 3, 2013, a jury trial was held. Harbin testified as a State's witness as part of a plea bargain. Under the plea bargain, he would not receive more that twenty years for his part in the armed robbery. Harbin testified that he and Goldman committed the robbery, held Foreman, Graham, and Bloom at gunpoint, fled the scene, and then later fled on foot

---

[3] *Miranda v. Arizona,* 384 U.S. 436 (1966).

from police officers. Harbin also testified that he threw the guns and masks out, but left the money and Graham's purse in the vehicle when he fled from police.

¶8.     Thomas Gandy, an employee from AT&T also testified at trial. AT&T was Goldman's cellular service provider at the time of the robbery. Gandy testified that on May 22, 2012, Goldman's cell phone was located at different points on I-55 between Grenada, Mississippi, and Duck Hill. Gandy testified that on that day, at no time was Goldman's cellular signal located in Jackson or the surrounding areas. The farthest point south the cell phone was located was at the Highway 51 cell tower in Duck Hill, which was around the time of the robbery.

¶9.     Goldman did not testify in his defense at trial. Goldman was convicted on two charges of armed robbery, two charges of kidnapping, and one charge of possession of a firearm by a felon. Goldman filed a motion for a JNOV or, in the alternative, a new trial on April 15, 2013, which was denied by the trial court on April 29, 2013.

¶10.    Goldman appeals.

## DISCUSSION

### I.     *Lindsey* Brief

¶11.    Goldman's appellate counsel filed a brief in accordance with *Lindsey v. State,* 939 So. 2d 743 (Miss. 2005). The Mississippi Supreme Court has held that appellate counsel must follow the following steps:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(4), (7)[.]

> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify

5

that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining:

> (a) the reason for the arrest and the circumstances surrounding arrest;
>
> (b) any possible violations of the client's right to counsel;
>
> (c) the entire trial transcript;
>
> (d) all rulings of the trial court;
>
> (e) possible prosecutorial misconduct;
>
> (f) all jury instructions;
>
> (g) all exhibits, whether admitted into evidence or not; and
>
> (h) possible misapplication of the law in sentencing.

(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.

(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

*Moore v. State,* 119 So. 3d 1116, 1118-19 (¶10) (Miss. Ct. App. 2013) (citing *Lindsey,* 939 So. 2d at 748 (¶18)).  Additionally, "[i]f the defendant raises any arguable issue in his pro se brief or if the appellate court finds any arguable issues upon its independent review of the record, the appellate court must, if circumstances warrant, require counsel to file a

6

supplemental brief of the issue." *Fillyaw v. State,* 10 So. 3d 986, 988 (¶10) (Miss. Ct. App. 2009).

¶12. Goldman's appellate counsel has filed a *Lindsey* brief stating that he diligently searched the procedural and factual history of this case searching for arguable issues that could be presented to the Court on Goldman's behalf in good faith and concluded that he can find no such issues. The potential matters that were included in the search were: (a) the reason for Goldman's arrest and the circumstances surrounding his arrest; (b) any possible violations of Goldman's right to counsel; (c) the entire trial transcript and content of the record; (d) all rulings of the trial court, specifically, the rulings on various defense-counsel objections, including, but not limited to, objections made by defense counsel that were properly sustained; (e) possible prosecutorial misconduct; (f) all jury instructions, specifically, but not limited to, those requested by defense counsel and refused by the trial court; (g) all exhibits, whether admitted into evidence or not; (h) possible misapplication of the law in sentencing, including, but not limited to, the constitutionality of Goldman's sentence in light of his habitual status; (i) the indictment and all of the pleadings in the record; (j) any possible ineffective-assistance-of-counsel issues; and (k) any potential discovery violations.

¶13. Goldman filed a pro se supplemental brief and raises several issues. Therefore, we will address those issues.

## II. Goldman's Assignments of Error

### A. Whether Goldman was denied effective assistance of counsel when counsel failed to request an

7

**impeachment instruction in support of Goldman's defense.**

¶14. Goldman argues that his trial counsel failed to "act" as counsel, which resulted in Goldman not receiving adequate assistance of counsel both at the trial-court level and the appellate level. Goldman asserts that he was entitled to a jury instruction about the impeachment of a key State witness, Harbin. Goldman also argues that his trial counsel's failure to obtain an impeachment jury instruction was error and should be considered ineffective assistance of counsel.

¶15. In order to prove an ineffective-assistance-of-counsel claim, Goldman must show that "(1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense." *Collins v. State,* 70 So. 3d 1144, 1147 (¶16) (Miss. Ct. App. 2011) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). Also, there is a "strong presumption that counsel's performance falls within the range of reasonable professional assistance." *Jackson v. State,* 73 So. 3d 1176, 1181 (¶19) (Miss. Ct. App. 2011). In order to overcome the presumption, Goldman must show "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

¶16. Furthermore, it is a well-established rule that on direct appeal, we address the merits of an ineffective-assistance-of-counsel claim only when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate enough to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Hibbler v. State,* 115 So. 3d 832, 838 (¶21) (Miss. Ct. App. 2012) (citing *Robinson v. State,* 66 So. 3d 721, 723 (¶10) (Miss. Ct. App. 2011)). Also,

"on direct appeal, review of an ineffective assistance of counsel claim is confined strictly to the record." *Id.* at 838-39 (¶21).

¶17. Goldman was afforded an attorney at trial and received a jury instruction dealing with the impeachment of Harbin. Jury instruction 6 states:

> You have heard evidence that Kunta Kinta Harbin made statements prior to trial that may be inconsistent with his testimony at trial. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the witness's testimony.

Accordingly, we find that it is not apparent in the record that there was "ineffectiveness of constitutional dimensions." Therefore, we dismiss the ineffective-assistance-of-counsel claim without prejudice so that Goldman may bring the claim in a post-conviction proceeding if he so desires

### B. Whether the State failed to prove the basis of a habitual-offender sentence enhancement.

¶18. Goldman argues that the State did not prove the basis for the habitual-offender sentence enhancement, much less prove it beyond a reasonable doubt. Goldman further contends that the State failed to prove that he was the person who was convicted in the previous cases cited in the indictment.

¶19. "To impose a sentence as a habitual offender, all that is required is that the accused be properly indicted as a habitual offender, that the prosecution prove the prior offenses by competent evidence, and that a defendant be given a reasonable opportunity to challenge the prosecution's proof." *Edwards v. State,* 75 So. 3d 73, 76 (¶9) (Miss. Ct. App. 2011).

¶20. Here, Goldman was properly indicted as a habitual offender. The State is required to

present competent evidence, as was presented in this case. Further, Goldman was also afforded an opportunity to challenge the habitual-offender status. Therefore, this issue is without merit.

### C. Whether the trial court violated double jeopardy.

¶21. Goldman argues that the Double Jeopardy Clause of the United States Constitution has been violated. Generally speaking, we apply a de novo review to claims of double jeopardy. *Kelly v. State,* 80 So. 3d 802, 804 (¶8) (Miss. Ct. App. 2012) (citing *Boyd v. State,* 977 So. 2d 329, 334 (¶13) (Miss. 2008)). "Double jeopardy protection applies to successive prosecutions for the same criminal offense." *White v. State,* 702 So. 2d 107, 109 (¶10) (Miss. 1997) (citing *United States v. Dixon,* 509 U.S. 688, 694 (1993)). Further, "the same-elements test is used to determine whether double jeopardy attaches. If the offenses contain the same elements, they are the same offense, and double jeopardy bars additional punishment and successive prosecution." *Sills v. State,* 105 So. 3d 1189, 1191 (¶8) (Miss. Ct. App. 2013) (citing *Teston v. State,* 44 So. 3d 977, 985 (¶13) (Miss. Ct. App. 2008)).

¶22. Here, Goldman was indicted on three counts of armed robbery pursuant to Mississippi Code Annotated section 97-3-79 (Rev. 2014) and kidnapping pursuant to Mississippi Code Annotated section 97-3-53 (Rev. 2014). Each count related to a different victim. Goldman was also indicted on a charge of possession of a deadly weapon by a felon. No charges were duplicated, and Goldman was not convicted of two crimes that contained the same elements. Therefore, this issue is without merit.

### CONCLUSION

10

¶23. After reviewing the record, we find that Goldman has failed to raise any arguable issues on appeal, pursuant to the rules set forth in *Fillyaw*. As noted above, Goldman is free to file an ineffective-assistance-of-counsel claim in a separate post-conviction proceeding, if he so desires. However, before filing a post-conviction-relief motion in the trial court of his conviction, he must first gain permission from the Mississippi Supreme Court. Miss. Code Ann. § 99-39-7 (Supp. 2014). Accordingly, we affirm the trial court's judgment of conviction and sentence.

¶24. **THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT OF CONVICTION OF COUNTS I AND II, ARMED ROBBERY; COUNTS IV AND V, KIDNAPPING; AND COUNT VII, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCES, AS A HABITUAL OFFENDER, OF THIRTY YEARS EACH FOR COUNTS I AND II; THIRTY YEARS EACH FOR COUNTS IV AND V; AND TEN YEARS FOR COUNT VII; WITH THE SENTENCES FOR COUNTS I, IV, AND VII TO RUN CONSECUTIVELY TO EACH OTHER BUT CONCURRENTLY WITH THE SENTENCES IN COUNTS II AND V, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONTGOMERY COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**